**ORIGINAL**

UNITED STATES DISTRICT COURT
~~SOUTHERN~~ DISTRICT OF NEW YORK
EASTERN -------------------------------------------------X

CHRISTOPHER SHAFFER, RICHMOND PIZZA, INC.,
AL'S HYLAN, INC., CHRIS AMBOY PIZZA, INC.,
ALEXANDRE POLIAKOV and SELL MORE PIZZA,
INC.,

Civil Action No. **CV 02-3898**

Plaintiffs,  **NOTICE OF REMOVAL**

BLOCK, J.

-against-

POHORELSKY, M.J. FILED

DOMINO'S PIZZA, LLC,

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

Defendant.   ✳ JUL 03 2002 ✳

-------------------------------------------------X  BROOKLYN OFFICE

     Pursuant to 28 U.S.C. §§ 1441 and 1446, defendant Domino's Pizza, LLC, by its

attorneys Farrell Fritz, P.C., submit this Notice of Removal and state as follows:

    1.    On July 1, 2002, this action was commenced against the removing parties in the

Supreme Court of the State of New York, County of Richmond, and is now pending.

    2.    The Southern District of New York embraces the place where this action is

pending.

    3.    On July 2, 2002, defendant was served with a Summons and Complaint and an

Order to Show Cause by overnight mail at the office of Farrell Fritz, P.C., EAB Plaza,

Uniondale, New York.

    4.    Upon information and belief, no other parties have been joined and served as a

defendant in the above-captioned action.

5.     A copy of the Order to Show Cause, Complaint and all supporting documentation are annexed hereto and constitute all process, pleadings and orders served upon the defendant in this action.

6.     At the time plaintiffs commenced this action in State court and at the time of removal, the defendant was and is a limited liability cooperative, formed and operating pursuant to the laws of the State of Michigan, with its principal place of business at 30 Frank Lloyd Wright Avenue, Ann Arbor, Michigan 48106.

7.     Upon information and belief, at the time plaintiff commenced this action in State court and at the time of removal, plaintiffs were and are residents of Richmond County, State of New York.

8.     Complete diversity of citizenship exists as between plaintiffs and the defendant.

9.     Plaintiffs claim damages in excess of the amount of $75,000, exclusive of interest and cost.  This amount in controversy exceeds the jurisdictional minimum of this Court.

10.     This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, and is filed with this Court within 30 days after service on the defendant of the Summons and Complaint in this action.

11.     Written notice of filing of this Notice of Removal will be given to plaintiffs, and a copy will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d).

12.     In filing this Notice of Removal, defendant does not waive any defense that may be available to it.

WHEREFORE, defendant respectfully requests that the action now proceeding against it be removed from the Supreme Court, State of New York, County of Richmond, to this Court.

Dated: Uniondale, New York
       July 3, 2002

FARRELL FRITZ, P.C.
*Attorneys for Defendant*

By: _____
James M. Wicks (JW 6177)
Michael J. Healy (6718)
Joseph N. Campolo (JC 8079)
EAB Plaza
Uniondale, New York 11556
(516) 227-0700

FFDOCS1\481144.1

At a _DCM PART 5_ Term of the Supreme
Court of the State of New York,
County of Richmond, at the County
Courthouse thereof, located at _355_
_FRONT ST._, Staten
Island, New York on the 1st day of
July, 2002

PRESENT:

Honorable   _ALAN L. LEBOWITZ_

, Justice

-----------------------------------------------------------------x

CHRISTOPHER SHAFFER, RICHMOND
PIZZA, INC., AL'S HYLAN, INC., CHRIS
AMBOY PIZZA, INC., ALEXANDRE POLIAKOV
and SELL MORE PIZZA, INC.,

**ORDER TO**
**SHOW CAUSE**

                              Plaintiffs,

Index No. _12/92/02_

               -against-

DOMINO'S PIZZA, LLC,

                              Defendant.

-----------------------------------------------------------------x

        Upon reading and filing the annexed Summons and Complaint of plaintiffs dated June 30,

2002, the affidavit of Christopher Shaffer, sworn to the 30th day of June, 2002, the affidavit of

Alexandre Poliakov, sworn to the 30th day of June, 2002, the affidavit of Frank P. Costa sworn to the

1st day of July, 2002 and the Memorandum of Law.


        **LET THE DEFENDANT SHOW CAUSE** before this Court at Part _5_, Room _3-077_ of

this Court to be held in and for the County of Richmond, at the Courthouse located at _355 FRONT ST._

_____, Staten Island, New York on the _12th_ day of July, 2002, at

9:30 A.M. in the forenoon of that day or as soon thereafter as counsel can be heard, why an Order

should not be made and entered ordering (a) the defendant to immediately reinstate and maintain all

plaintiffs with all of the rights, privileges and benefits of operating franchises of defendant; (b) defendant to immediately supply all inventory, products, goods and materials requested plaintiffs in the regular course of business and at the credit terms (not C.O.D.) enjoyed by plaintiffs' prior to any allegations of wrongdoing on the part of plaintiffs; (c) plaintiffs' use of defendant's tradenames, trademarks, copyrights and other Domino's Pizza identifications, marks, name, assumed name and registrations; (d) plaintiffs' use of their telephone numbers; (e) plaintiffs' use and possession of defendant's Operating Manual; (f) plaintiffs' use of the store premises as presently constituted; (g) payment of all fees and obligations on the part of plaintiffs in the same manner as existed prior to any allegations of wrongdoing on the part of plaintiffs; (h) defendant to stop harassing plaintiffs, treat them as well as all other franchisees and do business with plaintiffs on the same basis as existed prior to any allegations of wrongdoing on the part of plaintiffs; (j) the granting of a temporary restraining order and preliminary injunction for the injunctive relief requested herein; (k) the granting of the injunctive relief requested in the Complaint pending resolution of these matters at trial; (l) defendant to pay to plaintiffs their legal fees, costs and disbursements, (m) appointing a monitor to facilitate the sale of plaintiffs' Domino's Pizza stores to prospective purchasers, (n) defendant to allow plaintiffs to remain open, operate their business and supply plaintiff's with their inventory needs, (o) defendant to allow plaintiffs to sell their franchises and (p) and for such other, further and different relief which this Court may deem just and proper in the premises; and it is further

**ORDERED THAT PENDING THE HEARING AND DETERMINATION OF THIS MOTION** defendant shall (a) immediately reinstate and maintain all plaintiffs with all of the rights, privileges and benefits of operating franchises of defendant; (b) immediately (no later than the next day after service of this order) supply all inventory, products, goods and materials requested by plaintiffs to operate their franchises in the regular course of business and at the credit terms (not C.O.D.) enjoyed by plaintiffs' prior to any allegations of wrongdoing on the part of plaintiffs; (c) allow plaintiffs' use of defendant's tradenames, trademarks, copyrights and other Domino's Pizza identifications, marks,

name, assumed name and registrations; (d) allow plaintiffs' use of their telephone numbers; (e) allow plaintiffs' use and possession of defendant's Operating Manual; (f) allow plaintiffs' use of the store premises as presently constituted; (g) collect payment of all fees and obligations on the part of plaintiffs in the same manner as existed prior to any allegations of wrongdoing on the part of plaintiffs; (h) stop harassing plaintiffs, treat them as well as all other franchisees and do business with plaintiffs on the same basis as existed prior to any allegations of wrongdoing on the part of plaintiffs; (i) allow plaintiffs to remain open, operate their business and supply plaintiff's with their inventory needs and (j) allow plaintiffs to sell their franchises and it is further

**ORDERED** that pending the hearing and determination of this motion and the entry of an order therein, defendant, its agents, employees, employers, attorneys and all persons acting in concert, participation or combination with defendant, directly or indirectly, are hereby restrained and stayed from enforcing the terms of any terminations, operational defaults, financial defaults, reductions in service or any actions that prevent plaintiffs from enjoying all rights, privileges and benefits of being franchisees of defendants.

**ORDERED** that sufficient reason appearing therefore, let service of a copy of this Order together with the papers upon which it was granted be sent on or before July 3, 2002 by Federal Express for next day delivery upon defendant at its office located at 2550 Victory Boulevard, Staten Island, New York 10314, or its corporate headquarters, be deemed sufficient; and it is further

**ORDERED** that sufficient reason appearing therefore, let service of a copy of this Order To Show Cause (without exhibits) providing for relief for defendants be faxed to defendant at its corporate office or headquarters, which shall constitute notice to comply with same; and it is further

**ORDERED** that all answering papers be served upon Mitchell J. Kassoff, attorney for

3

plaintiffs, so that he receives same at least five (5) business days before the return date for this motion.

ENTER

/s/
_____
, J.S.C.

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

-----------------------------------------------------------------x

CHRISTOPHER SHAFFER, RICHMOND
PIZZA, INC., AL'S HYLAN, INC., CHRIS
AMBOY PIZZA, INC., ALEXANDRE POLIAKOV
and SELL MORE PIZZA, INC.,

**AFFIDAVIT
IN SUPPORT
OF ORDER TO
SHOW CAUSE**

                                    Plaintiffs,

               -against-

          Index No.

DOMINO'S PIZZA, LLC,

                                  Defendant.

-----------------------------------------------------------------x

STATE OF NEW YORK    )
                  : ss.:
COUNTY OF RICHMOND)

        CHRISTOPHER SHAFFER, being duly sworn, deposes and says:

1.     I am the president of Richmond Pizza, Inc., Al's Hylan, Inc. and Chris Amboy Pizza, Inc., plaintiffs in this action and am fully familiar with the facts stated herein.

2.     I make this affirmation in support of the relief requested in the annexed Order To Show Cause.

3.     The Summons and Verified Complaint as to this matter are annexed hereto as Exhibit "A."

4.     Richmond Pizza, Inc. became a franchisee of defendant (store 3676) in January 1996.

5.     Al's Hylan, Inc. became a franchisee of defendant (store 3529) in December 1996.

6.     Chris Amboy Pizza, Inc. became a franchisee of defendant (store 3673) in October 1998.

7.     Sell More Pizza, Inc. became a franchisee of defendant (store 3512) in September

1999.

8.      Richmond Pizza, Inc., Al's Hylan, Inc., Chris Amboy Pizza, Inc. and Sell More Pizza, Inc. were franchisees of defendant up to the time of defendant's recent improper termination of that status.

9.      Upon information and belief defendant is an out of state Limited Liability Company with corporate headquarters located in Ann Arbor, Michigan and with a place of business located at 2550 Victory Boulevard, Staten Island, New York 10314.

10.     Plaintiff corporations were (until very recently) all in the business of operating Domino's Pizza franchise retail outlets specializing in the sale of pizza and other authorized food and beverage products and featuring carry-out and delivery services.

11.     Each plaintiff corporation executed a standard franchise agreement with defendant to operate such a Domino's Pizza Store under the Domino's system and a sublicense to use the marks in the operation of the store at a specific location in Richmond County, State of New York.

12.     Plaintiffs have been model franchisees over the years.

13.     Plaintiffs have been awarded numerous achievement awards and commendations by defendant over the years (Exhibit "B").

14.     The documents listed in Exhibit "B" do not include approximately ten plaques and other awards issued to plaintiffs by defendant.

15.     Because of the hard work and efforts of plaintiffs, defendant now has a strong and valuable presence in Staten Island.

16.     During the past six years, plaintiffs have worked extraordinarily hard to develop and market the subject Domino's Pizza franchise businesses by working huge hours.

17.     Due to plaintiffs' long and arduous work they have obtained great financial success

2

(Exhibit "C").

18.    Several years ago plaintiff wished to purchase a store in Brooklyn, New York.

19.    Plaintiffs were told by defendant that they should first reopen a store where a franchisee had just gone out of business in Staten Island.

20.    Defendant stated that after this store was reopened plaintiffs would be allowed to build a store in Brooklyn, New York.

21.    Defendant refused to honor this promise and instead defendant built a corporately owned store at this location.

22.    Plaintiffs followed the orders of defendant and built up their Staten Island businesses.

23.    In 2000 plaintiffs invested $570,000 in their stores to build a new store and relocate two other stores to better locations.

24.    In February 2002 defendant terminated plaintiffs' franchise for one of the stores because the Makeline refrigerator had to be repaired on several occasions.

25.    Defendant stated that if we bought a new Makeline refrigerator from defendant for $7,000 defendant would cancel its termination.

26.    A Makeline refrigerator typically sells for approximately $2,800.

27.    Even though we followed defendant's instructions and purchased a $2,800 Makeline refrigerator for $7,000 that we really did not need, defendant still terminated our franchise.

28.    Plaintiffs decided to sell one of their franchises.

29.    When asked if defendant would allow a manager of plaintiff's store to purchase a franchise defendant stated that it would not allow this sale to someone connected with plaintiffs.  This is despite the fact that the typical purchaser of defendant's franchises has traditionally been managers of stores.

30.    Plaintiff provided a different purchaser who met the criteria of defendant (see annexed Exhibit "D").

31.    Defendant has failed to act on this application or respond in any manner whatsoever.

32.    Now that plaintiffs have developed the Staten Island market, defendant has engaged in a series of activities to steal the fruits of our work.

33.    Plaintiffs have been discriminated against in that defendant is taking far more aggressive and serious action against plaintiffs as compared to other franchisees of defendant.

34.    Defendant changed the insurance requirements for plaintiffs.

35.    Plaintiffs and its insurance cooperated in every possible way with defendant.

36.    Defendant kept changing its new requirements making it impossible for plaintiffs to meet them.

37.    For the past several months defendant has been making numerous inspections.

38.    During these inspections defendant has been using its subjective criteria to rate plaintiffs.

39.    Based on these subjective criteria defendant has stated that plaintiffs were in breach of their agreement and had to cure defects.

40.    Plaintiffs took all possible steps to keep in compliance with the agreement and cure all defects, whether or not they were real, to avoid problems with defendant.

41.    These "inspections" were simply part of a plan to make a paper trail to seize plaintiffs' stores and steal our work of many years.

42.    Undoubtedly, these notices will be presented to the Court in an attempt for defendant to justify its actions.

43.    By letter dated June 21, 2002 (Exhibit "E") defendant once again terminated a

4

franchise and stated that defendant would stay legal proceedings until July 21, 2002 to allow plaintiffs to sell the store.

44.    Due to the requirements of defendant it would be impossible for us to sell the store in the stated time period.

45.    By letters dated June 25, 2002 (Exhibit "F") defendant placed us on C.O.D. for deliveries.

46.    The C.O.D. basis upon which defendant placed plaintiffs was not because plaintiff failed to make any payments to defendant.

47.    Due to the nature of the cash flow of this business this placed us in a serious financial difficulty and was done to attempt to drive us out of business.

48.    In response to this impossible situation we retained an attorney and had him send letters dated June 26, 2002 (Exhibit "G") to attempt to have this matter resolved without the need for litigation.

49.    In response to our attorney's letter we received a call from Scott Hoots, defendant's franchise director in the Baltimore office, which covers our territory.  During this call he asked if we would meet with him.

50.    We told him that we would be glad to meet with him and stated that we would have our attorney attend the meeting.

51.    Mr. Hoots told us that he would not meet with us if our attorney attended the meeting.

52.    In the hopes of resolving this matter without the need for litigation, we agreed to meet with him without our attorney being present.

53.    Once we met with Mr. Hoots it became apparent why he did not want our attorney present.

5

54.    The purpose of this meeting was not to resolve any difficulties or problems between us.

55.    At the meeting Mr. Hoots told us that defendant would purchase our stores according to a formula, which works out to a purchase price of approximately $800,000.

56.    This was despite the fact that defendant had refused to act on the purchase offer submitted to plaintiffs $2,300,000 for an independent purchaser.

57.    We told him that since we had a buyer willing to pay $2,300,000 we would not sell the stores to defendant for approximately $800,000.

58.    Mr. Hoots then handed to us the termination letters dated June 27, 2002 (Exhibit "H").

59.    Mr. Hoots then stated that we no longer had any stores to sell for any price.

60.    This termination was an act by defendant as a result of our failure to bow to defendant's extortion to take over our stores and the Staten Island market for one (1/3) third the price for which defendant was informed that we had a buyer.

61.    On June 28, 2002 defendant refused to make a scheduled delivery of product necessary to operate the franchise.

62.    As a result of defendant's actions, plaintiffs are unable to operate their franchise or meet their obligations.

63.    In response to this situation we had our attorney send a letter dated June 28, 2002 (Exhibit "I") to attempt to have this matter resolved so that defendant would not force us out of our franchise business.

64.    Although this letter was faxed at approximately noon on Friday, neither we nor our attorney have received any response.

65.    By refusing to make deliveries of product and materials or allow plaintiffs to operate

their franchises plaintiffs have caused and will continue to cause irreparable harm to plaintiffs.

66.     The harm includes plaintiff's inability to sell our franchises, which are worth in excess of Two Million ($2,000,000) Dollars.

67.     The inability to sell the franchises is that prospective purchases will not purchase a franchise unless they can observe them in operation.

68.     As shown in the accompanying exhibits, plaintiffs have made every possible effort to work with defendant to avoid the necessity of coming to this Court to seek relief.

69.     Plaintiffs' desire is to continue to operate their stores.  However, it appears that due to defendant's hostility it might be prudent to sell our stores.

70.     The purpose of this application for an appointment of a monitor is that defendant has failed to act reasonably and in good faith in approving a prospective purchaser and would most likely continue to fail to act in good faith.

71.     The granting of the requested Temporary, Preliminary and Permanent injunctions is desperately needed to avoid the loss of more than six years of hard work that plaintiffs incurred to build up the businesses so they are now very profitable.

72.     If Temporary, Preliminary and Permanent injunctions are not granted, plaintiffs' businesses will be destroyed and more than six years of work will be lost.

73.     Monetary damages will not be sufficient to make plaintiffs whole since it cannot be known how much money plaintiffs would have earned during the time it will take to resolve this matter.

74.     In addition, monetary damages will not be sufficient to make plaintiffs whole since plaintiffs will have lost the opportunity to sell its franchises to prospective purchasers during the time it will take to resolve this matter.

7

75.   Once a prospective purchaser is lost this loss can never be calculated or recovered since the purchaser will have made a different investment or purchase during this time period and will no longer be interested in purchasing plaintiffs' franchises.

76.   Since the prospective purchasers will no longer be interested in purchasing plaintiffs' franchises after the conclusion of litigation the loss will be permanent and irreparable.

77.   Plaintiffs' franchises are locally owned and operated.  If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will suffer a permanent and irreparable loss of customer base and goodwill.

78.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their contract with Wagner College, which provides great recognition and generation of orders from students, who are notoriously large pizza consumers.

79.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their leases and location.  The location of a franchise is one of the most important aspects of how well it will succeed.

80.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their telephone number.  This is how approximately 85% of our customers communicate with us.

81.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their expert employees.  The employees are needed to operate the business and to obtain replacements will be extremely difficult.

82.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will default on bank loan payments which will destroy our credit and make it impossible to operate a business in the future.

8

83.   Therefore, if the requested Temporary, Preliminary and Permanent injunctions are not granted the damages will be truly irreparable.

84.   If the requested Temporary, Preliminary and Permanent injunctions are not granted defendant will in effect have stolen all of our work.

85.   The granting of the requested Temporary, Preliminary and Permanent injunctions will in no way harm defendant and in fact will enrich defendant since defendant will still earn the franchise royalties for all sales made.

86.   Therefore, the granting of the requested Temporary, Preliminary and Permanent injunctions will not harm defendant in any way, while the requested Temporary, Preliminary and Permanent injunctions will protect the plaintiffs and allow this Court to do justice.

87.   Plaintiffs respectfully request that this Court grant the requested Temporary, Preliminary and Permanent injunctions to prevent plaintiffs from losing their life's work.

88.   No prior application for the relief requested herein has been made in this or any other court.

**WHEREFORE**, plaintiffs pray that an order be entered herein granting the relief requested in the annexed Order To Show Cause.

CHRISTOPHER SHAFFER

Sworn to before me this 30th
day of June, 2002

MITCHELL KASSOFF
Notary Public, State of New York
No. 31-4684254
Qualified in New York County
Commission Expires SEP 30, 2002

9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
-----------------------------------------------------------------x
CHRISTOPHER SHAFFER, RICHMOND
PIZZA, INC., AL'S HYLAN, INC., CHRIS
AMBOY PIZZA, INC., ALEXANDRE POLIAKOV
and SELL MORE PIZZA, INC.,

                           Plaintiffs,

           -against-

DOMINO'S PIZZA, LLC,

                             Defendant.
-----------------------------------------------------------------x

**AFFIDAVIT
IN SUPPORT
OF ORDER TO
SHOW CAUSE**

Index No.

STATE OF NEW YORK    )
                    : ss.:
COUNTY OF RICHMOND)

      ALEXANDRE POLIAKOV, being duly sworn, deposes and says:

      1.      I am the president of Sell More Pizza, Inc., plaintiff in this action and am fully familiar with the facts stated herein.

      2.      I make this affirmation in support of the relief requested in the annexed Order To Show Cause.

      3.      The Summons and Verified Complaint as to this matter are annexed hereto as Exhibit "A."

      4.      Richmond Pizza, Inc. became a franchisee of defendant (store 3676) in January 1996.

      5.      Al's Hylan, Inc. became a franchisee of defendant (store 3529) in December 1996.

      6.      Chris Amboy Pizza, Inc. became a franchisee of defendant (store 3673) in October 1998.

      7.      Sell More Pizza, Inc. became a franchisee of defendant (store 3512) in September

1999.

8.      Richmond Pizza, Inc., Al's Hylan, Inc., Chris Amboy Pizza, Inc. and Sell More Pizza, Inc. were franchisees of defendant up to the time of defendant's recent improper termination of that status.

9.      Upon information and belief defendant is an out of state Limited Liability Company with corporate headquarters located in Ann Arbor, Michigan and with a place of business located at 2550 Victory Boulevard, Staten Island, New York 10314.

10.     Plaintiff corporations were (until very recently) all in the business of operating Domino's Pizza franchise retail outlets specializing in the sale of pizza and other authorized food and beverage products and featuring carry-out and delivery services.

11.     Each plaintiff corporation executed a standard franchise agreement with defendant to operate such a Domino's Pizza Store under the Domino's system and a sublicense to use the marks in the operation of the store at a specific location in Richmond County, State of New York.

12.     Plaintiffs have been model franchisees over the years.

13.     Plaintiffs have been awarded numerous achievement awards and commendations by defendant over the years (Exhibit "B").

14.     The documents listed in Exhibit "B" do not include approximately ten plaques and other awards issued to plaintiffs by defendant.

15.     Because of the hard work and efforts of plaintiffs, defendant now has a strong and valuable presence in Staten Island.

16.     During the past six years, plaintiffs have worked extraordinarily hard to develop and market the subject Domino's Pizza franchise businesses by working huge hours.

17.     Due to plaintiffs' long and arduous work they have obtained great financial success

2

(Exhibit "C").

18.    Several years ago plaintiff wished to purchase a store in Brooklyn, New York.

19.    Plaintiffs were told by defendant that they should first reopen a store where a franchisee had just gone out of business in Staten Island.

20.    Defendant stated that after this store was reopened plaintiffs would be allowed to build a store in Brooklyn, New York.

21.    Defendant refused to honor this promise and instead defendant built a corporately owned store at this location.

22.    Plaintiffs followed the orders of defendant and built up their Staten Island businesses.

23.    In 2000 plaintiffs invested $570,000 in their stores to build a new store and relocate two other stores to better locations.

24.    In February 2002 defendant terminated plaintiffs' franchise for one of the stores because the Makeline refrigerator had to be repaired on several occasions.

25.    Defendant stated that if we bought a new Makeline refrigerator from defendant for $7,000 defendant would cancel its termination.

26.    A Makeline refrigerator typically sells for approximately $2,800.

27.    Even though we followed defendant's instructions and purchased a $2,800 Makeline refrigerator for $7,000 that we really did not need, defendant still terminated our franchise.

28.    Plaintiffs decided to sell one of their franchises.

29.    When asked if defendant would allow a manager of plaintiff's store to purchase a franchise defendant stated that it would not allow this sale to someone connected with plaintiffs. This is despite the fact that the typical purchaser of defendant's franchises has traditionally been managers of stores.

3

30.     Plaintiff provided a different purchaser who met the criteria of defendant (see annexed Exhibit "D").

31.     Defendant has failed to act on this application or respond in any manner whatsoever.

32.     Now that plaintiffs have developed the Staten Island market, defendant has engaged in a series of activities to steal the fruits of our work.

33.     Plaintiffs have been discriminated against in that defendant is taking far more aggressive and serious action against plaintiffs as compared to other franchisees of defendant.

34.     Defendant changed the insurance requirements for plaintiffs.

35.     Plaintiffs and its insurance cooperated in every possible way with defendant.

36.     Defendant kept changing its new requirements making it impossible for plaintiffs to meet them.

37.     For the past several months defendant has been making numerous inspections.

38.     During these inspections defendant has been using its subjective criteria to rate plaintiffs.

39.     Based on these subjective criteria defendant has stated that plaintiffs were in breach of their agreement and had to cure defects.

40.     Plaintiffs took all possible steps to keep in compliance with the agreement and cure all defects, whether or not they were real, to avoid problems with defendant.

41.     These "inspections" were simply part of a plan to make a paper trail to seize plaintiffs' stores and steal our work of many years.

42.     Undoubtedly, these notices will be presented to the Court in an attempt for defendant to justify its actions.

43.     By letter dated June 21, 2002 (Exhibit "E") defendant once again terminated a

4

franchise and stated that defendant would stay legal proceedings until July 21, 2002 to allow plaintiffs to sell the store.

44.    Due to the requirements of defendant it would be impossible for us to sell the store in the stated time period.

45.    By letters dated June 25, 2002 (Exhibit "F") defendant placed us on C.O.D. for deliveries.

46.    The C.O.D. basis upon which defendant placed plaintiffs was not because plaintiff failed to make any payments to defendant.

47.    Due to the nature of the cash flow of this business this placed us in a serious financial difficulty and was done to attempt to drive us out of business.

48.    In response to this impossible situation we retained an attorney and had him send letters dated June 26, 2002 (Exhibit "G") to attempt to have this matter resolved without the need for litigation.

49.    In response to our attorney's letter we received a call from Scott Hoots, defendant's franchise director in the Baltimore office, which covers our territory.  During this call he asked if we would meet with him.

50.    We told him that we would be glad to meet with him and stated that we would have our attorney attend the meeting.

51.    Mr. Hoots told us that he would not meet with us if our attorney attended the meeting.

52.    In the hopes of resolving this matter without the need for litigation, we agreed to meet with him without our attorney being present.

53.    Once we met with Mr. Hoots it became apparent why he did not want our attorney present.

54.   The purpose of this meeting was not to resolve any difficulties or problems between us.

55.   At the meeting Mr. Hoots told us that defendant would purchase our stores according to a formula, which works out to a purchase price of approximately $800,000.

56.   This was despite the fact that defendant had refused to act on the purchase offer submitted to plaintiffs $2,300,000 for an independent purchaser.

57.   We told him that since we had a buyer willing to pay $2,300,000 we would not sell the stores to defendant for approximately $800,000.

58.   Mr. Hoots then handed to us the termination letters dated June 27, 2002 (Exhibit "H").

59.   Mr. Hoots then stated that we no longer had any stores to sell for any price.

60.   This termination was an act by defendant as a result of our failure to bow to defendant's extortion to take over our stores and the Staten Island market for one (1/3) third the price for which defendant was informed that we had a buyer.

61.   On June 28, 2002 defendant refused to make a scheduled delivery of product necessary to operate the franchise.

62.   As a result of defendant's actions, plaintiffs are unable to operate their franchise or meet their obligations.

63.   In response to this situation we had our attorney send a letter dated June 28, 2002 (Exhibit "I") to attempt to have this matter resolved so that defendant would not force us out of our franchise business.

64.   Although this letter was faxed at approximately noon on Friday, neither we nor our attorney have received any response.

65.   By refusing to make deliveries of product and materials or allow plaintiffs to operate

their franchises plaintiffs have caused and will continue to cause irreparable harm to plaintiffs.

66.     The harm includes plaintiff's inability to sell our franchises, which are worth in excess of Two Million ($2,000,000) Dollars.

67.     The inability to sell the franchises is that prospective purchases will not purchase a franchise unless they can observe them in operation.

68.     As shown in the accompanying exhibits, plaintiffs have made every possible effort to work with defendant to avoid the necessity of coming to this Court to seek relief.

69.     Plaintiffs' desire is to continue to operate their stores.  However, it appears that due to defendant's hostility it might be prudent to sell our stores.

70.     The purpose of this application for an appointment of a monitor is that defendant has failed to act reasonably and in good faith in approving a prospective purchaser and would most likely continue to fail to act in good faith.

71.     The granting of the requested Temporary, Preliminary and Permanent injunctions is desperately needed to avoid the loss of more than six years of hard work that plaintiffs incurred to build up the businesses so they are now very profitable.

72.     If Temporary, Preliminary and Permanent injunctions are not granted, plaintiffs' businesses will be destroyed and more than six years of work will be lost.

73.     Monetary damages will not be sufficient to make plaintiffs whole since it cannot be known how much money plaintiffs would have earned during the time it will take to resolve this matter.

74.     In addition, monetary damages will not be sufficient to make plaintiffs whole since plaintiffs will have lost the opportunity to sell its franchises to prospective purchasers during the time it will take to resolve this matter.

75.   Once a prospective purchaser is lost this loss can never be calculated or recovered since the purchaser will have made a different investment or purchase during this time period and will no longer be interested in purchasing plaintiffs' franchises.

76.   Since the prospective purchasers will no longer be interested in purchasing plaintiffs' franchises after the conclusion of litigation the loss will be permanent and irreparable.

77.   Plaintiffs' franchises are locally owned and operated.  If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will suffer a permanent and irreparable loss of customer base and goodwill.

78.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their contract with Wagner College, which provides great recognition and generation of orders from students, who are notoriously large pizza consumers.

79.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their leases and location.  The location of a franchise is one of the most important aspects of how well it will succeed.

80.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their telephone number.  This is how approximately 85% of our customers communicate with us.

81.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their expert employees.  The employees are needed to operate the business and to obtain replacements will be extremely difficult.

82.   If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will default on bank loan payments which will destroy our credit and make it impossible to operate a business in the future.

8

83. Therefore, if the requested Temporary, Preliminary and Permanent injunctions are not granted the damages will be truly irreparable.

84. If the requested Temporary, Preliminary and Permanent injunctions are not granted defendant will in effect have stolen all of our work.

85. The granting of the requested Temporary, Preliminary and Permanent injunctions will in no way harm defendant and in fact will enrich defendant since defendant will still earn the franchise royalties for all sales made.

86. Therefore, the granting of the requested Temporary, Preliminary and Permanent injunctions will not harm defendant in any way, while the requested Temporary, Preliminary and Permanent injunctions will protect the plaintiffs and allow this Court to do justice.

87. Plaintiffs respectfully request that this Court grant the requested Temporary, Preliminary and Permanent injunctions to prevent plaintiffs from losing their life's work.

88. No prior application for the relief requested herein has been made in this or any other court.

**WHEREFORE**, plaintiffs pray that an order be entered herein granting the relief requested in the annexed Order To Show Cause.

_____
ALEXANDRE POLIAKOV

Sworn to before me this 30th
day of June, 2002

_____
MITCHELL KASSOFF
Notary Public, State of New York
No. 31-4684254
Qualified in New York County
Commission Expires SEPT 30, 2002

9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

-------------------------------------------------------x

CHRISTOPHER SHAFFER, RICHMOND
PIZZA, INC., AL'S HYLAN, INC., CHRIS
AMBOY PIZZA, INC., ALEXANDRE POLIAKOV
and SELL MORE PIZZA, INC.,

**AFFIDAVIT
IN SUPPORT
OF ORDER TO
SHOW CAUSE**

                    Plaintiffs,

        -against-

Index No.

DOMINO'S PIZZA, LLC,

                   Defendant.

-------------------------------------------------------x

STATE OF NEW JERSEY)
             : ss.:
COUNTY OF BERGEN  )

    FRANK P. COSTA, being duly sworn, deposes and says:

1.  I am the Executive Vice President of CostaCLG, LLC.

2.  My firm administers the insurance coverage for Sell More Pizza, Inc., one of the plaintiffs in this proceeding.

3.  I make this affirmation in support of the relief requested in the annexed Order To Show Cause.

4.  I have diligently worked with defendant for the past month to provide the insurance coverage required by defendant.

5.  Evidence of the insurance in force for each location was provided to defendant as requested.

6.  This coordination between our insured, defendant and our agency has consumed many hours over the past few weeks and has been addressed as a top priority in our firm.

1

7.  Every indication received from defendant until June 21, 2002 was that the coordination of insurance coverage was being handled as "business as usual" and that there was no cause for concern.

8.  Once defendant apparently placed our client into default, our agency intensified efforts even further to assure our client's compliance with all insurance requirements.

9.  In the interests of justice I request that this Court issue an order granting the relief requested in the annexed Order To Show Cause.

FRANK P. COSTA

Sworn to before me this _1st_
day of July 2002.

Notary Public

**GAIL E. BABAI**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires Aug. 3, 2004**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
---------------------------------------------------------------------x
CHRISTOPHER SHAFFER, RICHMOND
PIZZA, INC., AL'S HYLAN, INC., CHRIS
AMBOY PIZZA, INC., ALEXANDRE POLIAKOV
and SELL MORE PIZZA, INC.,

                                              Plaintiffs,

                -against-

DOMINO'S PIZZA, LLC,

                                     Defendant.
---------------------------------------------------------------------x

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS'
REQUEST FOR INJUNCTIVE RELIEF**
---------------------------------------------------------------------x

        MITCHELL J. KASSOFF
        Attorney for Plaintiffs
        Office and Post Office Address
        Two Foster Court
        South Orange, N.J. 07079-1002
        (973) 762-1776

## STATEMENT OF FACTS

The Court is respectfully directed to the affidavits annexed to the Order To Show for a full recitation of the facts in this action.

Briefly, the facts are quite simple.   Defendant Domino's Pizza, Inc. has terminated plaintiffs' franchises, has ordered them not to continue their business and has refused to supply any inventory or products.  This action has put plaintiffs out of their franchise business for which they have labored more than six years.

If the requested Temporary, Preliminary and Permanent injunctions are not granted, plaintiffs will lose their lifes' work.

Plaintiffs' request is simply that this Court order defendant to maintain the *status quo ante* while this matter is litigated.  If the injunctions are granted defendant will not be harmed since defendant will continue to receive royalties.  If the injunctions are not granted monetary damages will not suffice and it will be impossible to put plaintiffs back in their former position since it will be impossible to know how much plaintiffs would have made or would have sold their franchises.

## ANALYSIS OF THE LAW

The Court in *U.S. Ice Cream Corp. v. Carvel Corporation*, 136 A.D.2d 626; 523

N.Y.S.2d 869 (2nd Dep't 1988) held that:

> The defendants are clearly attempting to terminate the plaintiffs'
> exclusive licensing agreement and, absent a preliminary injunction,
> there is no assurance that the plaintiffs will be able to stay in
> business pending trial.  Such interference with an ongoing
> business, particularly one involving a unique product and an
> exclusive licensing and distribution arrangement, risks irreparable
> injury and is enjoinable (see, e.g., *Chrysler Realty Corp. v Urban
> Investing Corp., 100 AD2d 921; Roso-Lino Beverage Distribs. v
> Coca Cola Bottling Co., 749 F2d 124)*.  In the absence of any
> proof that Carvel will be harmed by the granting of injunctive
> relief in order to maintain the status quo, the existence of disputed
> factual issues should not preclude the remedy (see, *Burmax Co. v B
> & S Indus., 135 AD2d 599; City Store Gates Mfg. Corp. [**872] v
> United Steel Prods., 79 AD2d 671;* see also, *CPLR 6301; Blake v
> Biscardi, 52 AD2d 834; Nassau Roofing & Sheet Metal Co. v
> Facilities Dev. Corp., 70 AD2d 1021)*.  136 A.D.2d at 628.

Therefore, according to the holding of the Second Department in *Carvel* plaintiffs must

have their injunction granted.

The Court in *Anthony F. Wasilkowski, M.D., P. C., v. Amsterdam Memorial Hospital*, 92

A.D.2d 1016, 461 N.Y.S.2d 451 (3rd Dep't 1983) held that:

> A corporation entered into a written contract to provide radiology
> services to a hospital. The contract provided that either party could
> terminate the agreement as long as the action taken was not
> arbitrary or capricious in nature. The hospital terminated the
> agreement in order to reduce the operating expenses of the
> radiology department, which had operated at a loss. The
> corporation sought a preliminary injunction requiring the hospital
> to reinstate the corporation pending the trial of the underlying
> breach of contract action. The trial court denied preliminary
> injunctive relief, but the court reversed. The court held that the
> moving party had to demonstrate the likelihood of ultimate success
> on the merits; irreparable injury absent granting of the preliminary
> injunction; and a balancing of equities. The corporation made a
> prima facie showing that the hospital's action could have been seen
> as arbitrary or capricious, and disruption of the corporation's

practice would have resulted in the loss of good will and patient referrals, which was impossible to ascertain. 92 A.D.2d at 1016.

The Appellate Division reversed the order of the trial court that denied the corporation's motion for preliminary injunctive relief. The court granted a preliminary injunction directing the hospital to reinstate the corporation pending the underlying action.

Therefore, both the second and third departments have stated that the injunctive relief in a situation similar to that of plaintiffs should be granted.

In the case of *Saferstein v. HowardWendy*, 137 Misc. 2d 1032, 523 N.Y.S.2d 725 (Sup. Ct. N.Y. County 1987) the Court held that:

> The claim of irreparable injury is met with a glib response that money damages would make petitioner whole if the License Agreement has been wrongfully terminated. *This ignores the real threat that termination poses to the continued existence of Innomed* whose only asset is the valuable sublicense. Furthermore, Innomed has a valuable marketing agreement with Pfizer, Inc., that would be defeated. This agreement generates substantial revenues from which royalties on the plastic comb are supposed to be paid to Comb Associates. *Besides, the calculation of petitioner's damages if the license passes to another is an exercise in speculation.* It is true that part of these damages will be measured by the actual sales of the new licensee. But, if those sales could be greater had the license not been terminated, petitioner would be entitled to a higher sum incapable of measurement. *In any event, the possibility that money damages may be adequate does not prevent injunctive relief.* 137 Misc. 2d at 1035- 36. [Emphasis added].

In reviewing the facts of *Saferstein* with those of the instant case it is clear that the result would be the same in both cases. Therefore, for the reasons stated in *Saferstein*, the requested injunctive relief must be granted.

4

## SUMMARY AND CONCLUSION

In a situation as in the case at bar the injunctive relief must be granted to preserve the *status quo ante*. Should the injunctive relief not be granted, it will be impossible to properly compensate plaintiffs at the successful conclusion of the trial.

Respectfully Submitted,

*Kassoff*

MITCHELL J. KASSOFF
Attorney for Plaintiffs
Office and Post Office Address
Two Foster Court
South Orange, N.J. 07079-1002
(973) 762-1776

Exhibit "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
-------------------------------------------------------------------x

CHRISTOPHER SHAFFER, RICHMOND                    Index No.
PIZZA, INC., AL'S HYLAN, INC., CHRIS
AMBOY PIZZA, INC., ALEXANDRE POLIAKOV            **SUMMONS**
and SELL MORE PIZZA, INC.,

                                                 The basis of venue is
                              Plaintiffs,        plaintiffs' place of
                                                 business in the county
                    -against-                    of Richmond

DOMINO'S PIZZA, LLC,

                              Defendant.
-------------------------------------------------------------------x

To the above named defendant:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a
copy of your answer, or if the complaint is not served with the summons, to serve a notice of
appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of
the day of service (or within 30 days after the service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your failure to appear or answer,
Judgment will be taken against you by default for the relief demanded in the complaint.

Dated, June 30, 2002

Defendant's address:
2550 Victory Boulevard
Staten Island, New York 10314

 

*Kassoff*

MITCHELL J. KASSOFF
Attorney for Plaintiffs
Office and Post Office Address
Two Foster Court
South Orange, N.J. 07079-1002
(973) 762-1776

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
-------------------------------------------------------------------x
CHRISTOPHER SHAFFER, RICHMOND          Index No.
PIZZA, INC., AL'S HYLAN, INC., CHRIS
AMBOY PIZZA, INC., ALEXANDRE POLIAKOV   **VERIFIED**
and SELL MORE PIZZA, INC.,              **COMPLAINT**

                               Plaintiffs,

            -against-

DOMINO'S PIZZA, LLC,

                               Defendant.
-------------------------------------------------------------------x

      Plaintiffs, Christopher Shaffer, Richmond Pizza, Inc., Al's Hylan, Inc., Chris Amboy Pizza,

Inc., Alexandre Poliakov and Sell More Pizza, Inc., by their attorney Mitchell J. Kassoff, for their

verified complaint allege:

## AS AND FOR A FIRST CAUSE OF ACTION

    1.    Richmond Pizza, Inc., Al's Hylan, Inc., Chris Amboy Pizza, Inc. and Sell More Pizza,

Inc. are New York corporations with their principal place of business located in the County of

Richmond, State of New York.

    2.    Christopher Shaffer resides in the County of Richmond, State of New York.

    3.    Alexandre Poliakov resides in the County of Kings, State of New York.

    4.    Upon information and belief defendant Domino's Pizza, LLC is an out of state Limited

Liability Company with corporate headquarters located in Ann Arbor, Michigan and with a place of

business located at 2550 Victory Boulevard, Staten Island, New York 10314.

    5.    Richmond Pizza, Inc. became a franchisee of defendant (store 3676) in January 1996.

    6.    Al's Hylan, Inc. became a franchisee of defendant (store 3529) in December 1996.

    7.    Chris Amboy Pizza, Inc. became a franchisee of defendant (store 3673) in October

1998.

8.     Sell More Pizza, Inc. became a franchisee of defendant (store 3512) in September 1999.

9.     Richmond Pizza, Inc., Al's Hylan, Inc., Chris Amboy Pizza, Inc. and Sell More Pizza, Inc. were franchisees of defendant up to the time of defendant's recent improper termination of that status.

10.     Plaintiff corporations were (until very recently) all in the business of operating Domino's Pizza franchise retail outlets specializing in the sale of pizza and other authorized food and beverage products and featuring carry-out and delivery services.

11.     Each plaintiff corporation executed a standard franchise agreement with defendant to operate such a Domino's Pizza Store under the Domino's system and a sublicense to use the marks in the operation of the store the County of Richmond, State of New York.

12.     Plaintiffs have been model franchisees over the years.

13.     Plaintiffs have been awarded numerous achievement awards and commendations by defendant over the years.

14.     Because of the hard work and efforts of plaintiffs, defendant now has a strong and valuable presence in Staten Island.

15.     During the past six years, plaintiffs have worked extraordinarily hard to develop and market the subject Domino's Pizza franchise businesses in Staten Island by working huge hours.

16.     Due to plaintiffs' long and arduous work they have obtained great financial success.

17.     Several years ago plaintiff wished to purchase a store in Brooklyn, New York.

18.     Plaintiffs were told by defendant that they should first reopen a store where a

2

franchisee had just gone out of business in Staten Island.

19.   Defendant stated that after this store was reopened plaintiffs would be allowed to build a store in Brooklyn, New York.

20.   Defendant refused to honor this promise and instead defendant built a corporately owned store at this location.

21.   Plaintiffs followed the orders of defendant and built up their Staten Island businesses.

22.   In 2000 plaintiffs invested $570,000 in their stores to build a new store and relocate two other stores to better locations.

23.   In February 2002 defendant terminated plaintiffs' franchise for one of the stores because the Makeline refrigerator had to be repaired on several occasions.

24.   Defendant stated that if plaintiffs bought a new Makeline refrigerator from defendant for $7,000 defendant would cancel its termination.

25.   A Makeline refrigerator typically sells for approximately $2,800.

26.   Even though plaintiffs followed defendant's instructions and purchased a $2,800 Makeline refrigerator for $7,000, that plaintiffs really did not need, defendant still terminated plaintiffs' franchise.

27.   Plaintiffs decided to sell one of their franchises.

28.   When asked if defendant would allow a manager of plaintiff's store to purchase a franchise defendant stated that it would not allow this sale to someone connected with plaintiffs. This is despite the fact that the typical purchaser of defendant's franchises has traditionally been managers of stores.

29.   Plaintiff provided a different purchaser who met the criteria of defendant.

3

30.     Defendant has failed to act on this application or respond in any manner whatsoever.

31.     Now that plaintiffs have developed the Staten Island market for defendant, defendant has engaged in a series of activities to steal the fruits of plaintiffs' work.

32.     Plaintiffs have been discriminated against in that defendant is taking far more aggressive, serious and punitive actions against plaintiffs as compared to other franchisees of defendant.

33.     Defendant changed the insurance requirements for plaintiffs.

34.     Plaintiffs and its insurance agent cooperated in every possible way with defendant.

35.     Defendant kept changing its new requirements making it impossible for plaintiffs to meet them.

36.     For the past several months defendant has been making numerous inspections.

37.     During these inspections defendant has been using its subjective criteria to rate plaintiffs.

38.     Based on these subjective criteria defendant has stated that plaintiffs were in breach of their agreement and had to cure defects.

39.     Plaintiffs took all possible steps to keep in compliance with the agreement and cure all defects, whether or not they were real, to avoid problems with defendant.

40.     These "inspections" were simply part of a plan to make a paper trail to seize plaintiffs' stores and steal plaintiffs' work of many years.

41.     By letter dated June 21, 2002 defendant once again terminated a franchise and stated that defendant would stay legal proceedings until July 21, 2002 to allow plaintiffs to sell the franchise.

42.     Due to the requirements of defendant, it would be impossible for plaintiffs to sell the

4

store in the stated time period.

43.   By letters dated June 25, 2002 defendant placed plaintiffs on a C.O.D. basis for deliveries.

44.   The C.O.D. basis upon which defendant placed plaintiffs was not because plaintiff failed to make any payments to defendant.

45.   Due to the nature of the cash flow of this business this placed plaintiffs in a serious financial difficulty and was done to attempt to drive plaintiffs out of business.

46.   In response to this impossible situation plaintiffs retained an attorney and had him send letters dated June 26, 2002 to attempt to have this matter resolved without the need for litigation.

47.   In response to plaintiff's attorney's letter plaintiffs received a call from Scott Hoots, defendant's franchise director in the Baltimore office, which covers plaintiffs' territory.  During this call he asked if plaintiffs would meet with him.

48.   Plaintiffs told him that plaintiffs would be glad to meet with him and stated that plaintiffs would have their attorney attend the meeting.

49.   Mr. Hoots told plaintiffs that he would not meet with plaintiffs if plaintiffs' attorney attended the meeting.

50.   In the hopes of resolving this matter without the need for litigation, plaintiffs agreed to meet with Mr. Hoots without plaintiffs' attorney being present.

51.   Once plaintiffs met with Mr. Hoots it became apparent why he did not want plaintiffs' attorney present.

52.   The purpose of this meeting was not to resolve any difficulties or problems between the parties.

5

53.     At the meeting Mr. Hoots told plaintiffs that defendant would purchase plaintiffs' stores according to a formula, which works out to a purchase price of approximately $800,000.

54.     This was despite the fact that defendant had refused to act on the purchase offer submitted to plaintiffs by a third party for $2,300,000.

55.     Plaintiffs told Mr. Hoots that since plaintiffs had a buyer willing to pay $2,300,000 plaintiffs would not sell the stores to defendant for approximately $800,000.

56.     When plaintiffs refused to sell the stores to defendant Mr. Hoots handed to plaintiffs the termination letters dated June 27, 2002.

57.     Mr. Hoots then stated that plaintiffs no longer had any stores to sell for any price.

58.     This termination was an act by defendant as a result of plaintiffs' failure to bow to defendant's extortion to take over plaintiffs' stores and the Staten Island market for one (1/3) third the price for which defendant was informed that plaintiffs had a buyer.

59.     On June 28, 2002 defendant refused to make a scheduled delivery of product necessary to operate the franchise.

60.     As a result of defendant's actions, plaintiffs are unable to operate their franchise or meet their obligations.

61.     In response to this situation plaintiffs had plaintiffs' attorney send a letter dated June 28, 2002 to attempt to have this matter resolved so that defendant would not force plaintiffs out of plaintiffs' franchise business.

62.     Although this letter was faxed at approximately noon on Friday, neither plaintiffs nor plaintiffs' attorney have received any response.

63.     Defendant has refused every possible overture to stop or limit the damages that it

6

caused and continues to cause to plaintiffs.

64.     Plaintiffs demand judgment in the amount of $10,000,000.00 plus attorney's fees, costs, disbursements and interest from June 28, 2002 for damages arising from defendant's breach of contract.

## AS AND FOR A SECOND CAUSE OF ACTION

65.     Plaintiffs repeat and reallege paragraphs 1 through 64 as though fully set forth herein.

66.     Defendant's actions in dealing with plaintiffs amount to fraud.

67.     Plaintiffs demand judgment in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 for damages arising from defendant's fraudulent conduct.

## AS AND FOR A THIRD CAUSE OF ACTION

68.     Plaintiffs repeat and reallege paragraphs 1 through 67 as though fully set forth herein.

69.     Regardless of the terms of the contracts between the parties, there exists an obligation of an implicit covenant of good faith and fair dealing on the part of defendant.

70.     Defendant breached the implicit covenant of good faith and fair dealing with plaintiffs.

71.     Plaintiffs demand judgment in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 for damages arising from defendant's breach of the implicit covenant of good faith and fair dealing with plaintiff.

7

## AS AND FOR A FOURTH CAUSE OF ACTION

72.    Plaintiffs repeat and reallege paragraphs 1 through 71 as though fully set forth herein.

73.    Due to defendant's refusal to allow the sale of a franchise plaintiff was unable to pursue other business opportunities.

74.    This caused the plaintiff to lose the opportunities of business it could have earned in a loss of profits.

75.    Plaintiffs demand judgment in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 for damages arising from lost business opportunities.

## AS AND FOR A FIFTH CAUSE OF ACTION

76.    Plaintiffs repeat and reallege paragraphs 1 through 75 as though fully set forth herein.

77.    Article 33 of the General Business Law governs franchise activities within the State of New York ("Franchise Law").

78.    Defendant's actions violated the Franchise Law.

79.    Plaintiffs demand judgment in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 for damages arising from defendant's violation of Article 33 of the General Business Law.

## AS AND FOR A SIXTH CAUSE OF ACTION

80.    Plaintiffs repeat and reallege paragraphs 1 through 72 as though fully set forth herein.

81.    Defendant's actions were most egregious in depriving plaintiffs of their property rights in their franchises.

82.    Defendants' actions were most egregious in attempting to extort the purchase of plaintiff's franchises for less then one (1/3) third of the price for which plaintiffs had a purchaser.

83.    It is apparent that defendants took their action in the belief that they could use their grossly superior financial resources and ability to control the goods and materials that plaintiffs need to operate their franchises to trample on the rights of plaintiffs.

84.    It is necessary to make crystal clear that the law will not allow large out of state corporations to destroy local individuals rights due to our of state corporate superior bargaining power and assets.

85.    Plaintiffs demand judgment in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 for punitive damages.


## AS AND FOR A SEVENTH CAUSE OF ACTION

86.    Plaintiffs repeat and reallege paragraphs 1 through 85 as though fully set forth herein.

87.    By refusing to make deliveries of product and materials or allow plaintiffs to operate their franchises plaintiffs have caused and will continue to cause irreparable harm to plaintiffs.

88.    The harm includes plaintiff's inability to sell its franchises, which are worth in excess of Two Million ($2,000,000) Dollars.

89.    The inability to sell the franchises is that prospective purchases will not purchase a franchise unless they can observe them in operation.

90.    Plaintiffs have made every possible effort to work with defendant to avoid the necessity of

coming to this Court to seek relief.

91.     Plaintiffs' desire is to continue to operate their stores.  However, it appears that due to defendant's hostility it might be prudent to sell plaintiffs' stores.

92.     The purpose of this application for an appointment of a monitor is that defendant has failed to act reasonably and in good faith in approving a prospective purchaser and would most likely continue to fail to act in good faith.

93.     If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their contract with Wagner College, which provides great recognition and generation of orders from students, who are notoriously large pizza consumers.

94.     If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their leases and location.  The location of a franchise is one of the most important aspects of how well it will succeed.

95.     If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their telephone number.  This is how approximately 85% of our customers communicate with us.

96.     If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will lose their expert employees.  The employees are needed to operate the business and to obtain replacements will be extremely difficult.

97.     If the requested Temporary, Preliminary and Permanent injunctions are not granted then plaintiffs will default on bank loan payments which will destroy our credit and make it impossible to operate a business in the future.

98.     Therefore, if the requested Temporary, Preliminary and Permanent injunctions are not

10

granted the damages will be truly irreparable.

99.     If the requested Temporary, Preliminary and Permanent injunctions are not granted defendant will in effect have stolen all of our work.

100.    The granting of the requested Temporary, Preliminary and Permanent injunctions will in no way harm defendant and in fact will enrich defendant since defendant will still earn the franchise royalties for all sales made.

101.    Therefore, the granting of the requested Temporary, Preliminary and Permanent injunctions will not harm defendant in any way, while the requested Temporary, Preliminary and Permanent injunctions will protect the plaintiffs and allow this Court to do justice.

102.    Plaintiffs respectfully request that this Court grant the requested Temporary, Preliminary and Permanent injunctions to prevent plaintiffs from losing their lifes' work.

103.    Therefore, the granting of the requested Temporary, Preliminary and Permanent injunctions will not harm defendant in any way, while the requested Temporary, Preliminary and Permanent injunctions will protect the plaintiffs and allow this Court to do justice.

104.    Plaintiffs request Temporary, Preliminary and Permanent injunctions ordering (a) the defendant to immediately reinstate and maintain all plaintiffs with all of the rights, privileges and benefits of operating franchises of defendant; (b) defendant to immediately supply all inventory, products, goods and materials requested plaintiffs in the regular course of business and at the credit terms (not C.O.D.) enjoyed by plaintiffs' prior to any allegations of wrongdoing on the part of plaintiffs; (c) plaintiffs' use of defendant's tradenames, trademarks, copyrights and other Domino's Pizza identifications, marks, name, assumed name and registrations; (d) plaintiffs' use of their telephone numbers; (e) plaintiffs' use and possession of defendant's Operating Manual; (f) plaintiffs' use of the store premises as presently

11

constituted; (g) payment of all fees and obligations on the part of plaintiffs in the same manner as existed prior to any allegations of wrongdoing on the part of plaintiffs; (h) defendant to stop harassing plaintiffs, treat them as well as all other franchisees and do business with plaintiffs on the same basis as existed prior to any allegations of wrongdoing on the part of plaintiffs; (j) the granting of a temporary restraining order and preliminary injunction for the injunctive relief requested herein; (k) the granting of the injunctive relief requested in the Complaint pending resolution of these matters at trial; (l) defendant to pay to plaintiffs their legal fees, costs and disbursements, (m) appointing a monitor to facilitate the sale of plaintiffs' Domino's Pizza stores to prospective purchasers, (n) defendant to allow plaintiffs to remain open, operate their business and supply plaintiff's with their inventory needs, (o) defendant to allow plaintiffs to sell their franchises and (p) and for such other, further and different relief which this Court may deem just and proper in the premises.

**WHEREFORE**, Plaintiffs demand judgment against defendant: (a) in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 as and for compensatory damages for the First Cause of Action; (b) in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 for compensatory damages for the Second Cause of Action; (c) in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 as and for compensatory damages for the Third Cause of Action; (d) in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 as and for compensatory damages for the Fourth Cause of Action; (e) in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 as and for compensatory damages for the Fifth Cause of Action; (f) in the amount of $10,000,000.00, plus attorney's fees, costs, disbursements and interest from June 28, 2002 as and for punitive damages

for the Sixth Cause of Action; (g) granting Temporary, Preliminary and Permanent injunctions ordering (a) the defendant to immediately reinstate and maintain all plaintiffs with all of the rights, privileges and benefits of operating franchises of defendant; (b) defendant to immediately supply all inventory, products, goods and materials requested plaintiffs in the regular course of business and at the credit terms (not C.O.D.) enjoyed by plaintiffs' prior to any allegations of wrongdoing on the part of plaintiffs; (c) plaintiffs' use of defendant's tradenames, trademarks, copyrights and other Domino's Pizza identifications, marks, name, assumed name and registrations; (d) plaintiffs' use of their telephone numbers; (e) plaintiffs' use and possession of defendant's Operating Manual; (f) plaintiffs' use of the store premises as presently constituted; (g) payment of all fees and obligations on the part of plaintiffs in the same manner as existed prior to any allegations of wrongdoing on the part of plaintiffs; (h) defendant to stop harassing plaintiffs, treat them as well as all other franchisees and do business with plaintiffs on the same basis as existed prior to any allegations of wrongdoing on the part of plaintiffs; (j) the granting of a temporary restraining order and preliminary injunction for the injunctive relief requested herein; (k) the granting of the injunctive relief requested in the Complaint pending resolution of these matters at trial; (l) defendant to pay to plaintiffs their legal fees, costs and disbursements, (m) appointing a monitor to facilitate the sale of plaintiffs' Domino's Pizza stores to prospective purchasers, (n) defendant to allow plaintiffs to remain open, operate their business and supply plaintiff's with their inventory needs and (o) defendant to allow plaintiffs to sell their franchises for the Seventh Cause of Action and (p) awarding such other and further relief as is just and proper.

Dated: New York, New York
      June 30, 2002

*Kassoff*

MITCHELL J. KASSOFF
Attorney for Plaintiffs
Office and Post Office Address
Two Foster Court
So. Orange, N.J. 07079-1002
(973) 762-1776

## CORPORATE VERIFICATION

STATE OF NEW YORK        )

                                            :ss.:

COUNTY OF NEW YORK )

CHRISTOPHER SHAFFER, being duly sworn, deposes and says:

I am the president of Richmond Pizza, Inc., Al's Hylan, Inc. and Chris Amboy Pizza, Inc. I have read the foregoing Complaint and know the contents thereof and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

This Verification is made by me because the defendant is a corporation and I am an officer thereof.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows: review of records, review of the public record and conversations with other persons.

CHRISTOPHER SHAFFER

Sworn to before me this
30th day of June, 2002.

Notary Public

MITCHELL KASSOFF
Notary Public, State of New York
No. 31-4684254
Qualified in New York County
Commission Expires SEPT 30, 2002

Exhibit "B"



# CONGRATULATIONS!

You recently won the Sales Ladder
Incentive Program!!  By now you should have
received your Sony DVD for


3673
1/6/02


You achieved over 15k in
weekly sales for the first time!

Congratulations on your
giant achievement!

We are proud to have you
as part of our team!


## Delivering a Million Smiles a Day.

**Domino's Pizza Distribution**

30 Frank Lloyd Wright Drive  ◆  P.O. Box 970  ◆  Ann Arbor, Michigan 48106-0970  ◆  Phone: 734-930-3030  ◆  Fax: 734-663-7063

December 22, 2000

Dear Romani Shenoda:

In recognition for your exceptional performance in achieving a 4 Star rating in the Operations Evaluation Report preliminary round, enclosed are 4 Star pins for you and your crew. Wear them with pride!

Sincerely,

Mike Soignet
Executive Vice President of Maintain High Standards

Patricia Moore Thomas
Vice President of Maintain High Standards



Clayton Harvey
Director of Quality Compliance

Domino's Pizza Vision:
Exceptional people on a mission to be the best pizza delivery company in the world!

Our Guiding Principles
At the Moment of Choice . . .
1. We demand integrity.
2. Our people come first.
3. We take great care of our customers.
4. We make Perfect 10 pizzas every day.
5. We operate with smart hustle and positive energy.

**Exceptional people on a mission to be the best pizza deli**



# Silver Challenge

presented to

Paul Quartuccio
Manager of Store #3673

for achieving at least a 25% increase in sales
for four consecutive periods.

_Stuart K Mathis_
Stuart Mathis, Vice President of Franchise Operations

_Thomas S. Monaghan_
Thomas S. Monaghan, President

5, 99 through 8, 99
Periods



# ACHIEVEMENT a w a r a

presented to

## Paul Quartucco

Manager of Store # 3673

for sales building efforts
resulting in a record week for
week ending    January 3, 1999

*Congratulations!*

_Patrick Kelly_

Vice President of Corporate Operations

_Grant Mathis_

Vice President of Franchise Operations



# Silver Challenge

presented to

Paul Quartuccio
Manager of Store #3673

for achieving at least a 25% increase in sales
for four consecutive periods.

Stuart K Mathis, Vice President of Franchise Operations

Thomas S. Monaghan, President

11, 98 through 1, 99
**Periods**



# ACHIEVEMENT
*award*

presented to

## Paul Quartuccio

Manager of Store # 3673

for sales building efforts
resulting in a record week for
week ending    December 20, 1998.

*Congratulations!*

*Patrick Kelly*
Vice President of Corporate Operations

*Sprout Mathis*
Vice President of Franchise Operations



# Silver Challenge®

presented to

*Emilo Vargos*
*Manager of Store #3529*

for achieving at least a 25% increase in sales
for four consecutive periods.

*Stuart K Mathis*
Stuart Mathis, Vice President of Franchise Operations

*Thomas A. Monaghan*
Thomas S. Monaghan, President

7 98 through 10 98
Periods



# Silver Challenge

presented to

*Alex Poliakov*

*Manager of Store #3529*

for achieving at least a 25% increase in sales
for four consecutive periods.

*Stuart K Mathis*

Stuart Mathis, Vice President of Franchise Operations

*Thomas S. Monaghan*

Thomas S. Monaghan, President

4, 98 through 7, 98

Periods

JUN-25-2002 05:05 AM                    P.06



# ACHIEVEMENT award

presented to

## Chris Shaffer

Manager of Store #    3676

for sales building efforts
resulting in a record week for
week ending    June 28, 1998

*Congratulations!*

Stuart Mathis

Vice President of Franchise Operations

Patrick Kelly

Vice President of Corporate Operations



**Domino's Pizza, Inc.**
Baltimore Region
1190 Winterson Road, Suite 200
Linthicum Heights, Maryland 21090-2221

410-859-3030
410-850-4436 (FAX)

Thursday, February 05, 1998

Chris Shaffer
4909 Surf Ave., Apt. 3
Brooklyn, NY 11224

Dear Chris:

We want to congratulate you on achieving the Franchisee of the Period award for Period 1,
1998. You were selected out of 350 franchisees in our region for your outstanding efforts that
are resulting in excellent performance.

Enclosed you will find a catalog from L.L. Bean with a $100 gift certificate. This gift is a
token of our appreciation for your contribution to making Domino's Pizza the greatest pizza
delivery company on planet earth.

If you ever need anything from us, don't hesitate to call.

Keep up the GREAT work!

Sincerely,
Team Northeast

# Special Achievement Award

Presented to

**Serge Dolgov**

Manager of

**Store 3529**

for sales building efforts
resulting in a record week
for week ending

4/27/97
CONGRATULATIONS!

*Vice President of Corporate Operations*

*Vice President of Franchise Operations*

©1995 Domino's Pizza, Inc.

# Special Achievement Award

Presented to

## Serge Dolgov

Manager of

## Store 3529

for sales building efforts
resulting in a record week
for week ending

4/20/97
CONGRATULATIONS!

*Patrick Kelly*
Vice President of Corporate Operations

*Shanti Mathis*
Vice President of Franchise Operations

©1995 Domino's Pizza, Inc.

# Special Achievement Award

Presented to

## Serge Dolgov

Manager of

## Store   3529

for sales building efforts
resulting in a record week
for week ending

6/15/97
CONGRATULATIONS!

*Patrick Kelley*
**Vice President of Corporate Operations**

*Shanti Mathis*
**Vice President of Franchise Operations**

©1995 Domino's Pizza, Inc.

# Special Achievement Award

Presented to

## Chris Shaffer

Manager of

## Store 3676

for sales building efforts

resulting in a record week

for week ending

## 3/10/96
## CONGRATULATIONS!

*Patrick Kelly*
**Vice President of Corporate Operations**

*Anant Mathis*
**Vice President of Franchise Operations**

©1993 Domino's Pizza, Inc.

# Special Achievement Award

Presented to

## Chris Shaffer

Manager of

## Store 3676

for sales building efforts
resulting in a record week
for week ending

**3/3/96**

CONGRATULATIONS!

_Patrick Kelly_
**Vice President of Corporate Operations**

_Sharon Mathis_
*Vice President of Franchise Operations*

©1995 Domino's Pizza, Inc.

# Special Achievement Award

Presented to

## Chris Shaffer

Manager of

## Store 3676

for sales building efforts
resulting in a record week
for week ending

## 2/25/96
CONGRATULATIONS!

*Vice President of Corporate Operations*

*Vice President of Franchise Operations*

©1993 Domino's Pizza, Inc.

# Special Achievement Award

Presented to

## Chris Shaffer

Manager of

## Store 3676

for sales building efforts
resulting in a record week
for week ending

## 2/4/96

CONGRATULATIONS!

*Vice President of Franchise Operations*

*Vice President of Corporate Operations*

©1995 Domino's Pizza, Inc.

# DOMINO'S PIZZA, INC.

## Golden Challenge

*Domino's Pizza, Incorporated, Team Northeast hereby expresses its appreciation to*

*Chris Shaffer, store #8529*

*For achieving an outstanding sales increase of 56.0% from December 1996 through April 1997*

_____
Stuart Mathis, Vice President of Franchise Operations

_____
Thomas S. Monaghan, President

1 thru 4
Period

DOMINO'S PIZZA, INC.

# Golden Challenge

Domino's Pizza, Incorporated, Team Northeast
hereby expresses its appreciation to

Chris Shaffer, store #8676

For achieving an outstanding sales increase of 50.0%
from May 1, 1996 through September 1996

_Stuart Mathis_

Stuart Mathis, Vice President of Franchise Operations

_Thomas A. Monaghan_

Thomas S. Monaghan, President

6 thru 9
Period

# DOMINO'S PIZZA, INC.

## Silver Challenge

Domino's Pizza, Incorporated, Team Northeast
hereby expresses its appreciation to

### Chris Shaffer, store #8676

For achieving an outstanding sales increase of 88.0%
from March 1996 through July 1996

_Stuart Mathis_
Stuart Mathis, Vice President of Franchise Operations

_Thomas S. Monaghan_
Thomas S. Monaghan, President

4 thru 7
Period



# Shamrock Challenge

presented to

*Alex Poliakow*

*Manager Of Store #3529*

for achieving at least a 100% increase in sales for four consecutive periods.

Stuart K Mathis

Stuart Mathis, Vice President of Franchise Operations

Thomas S. Monaghan, President

*18 through 8*

Periods

Domino's Pizza®

# DOMINO'S PIZZA, INC.

## Diamond Challenge

Domino's Pizza, Incorporated, Team Northeast hereby expresses its appreciation to

### Chris Shaffer, store #8529

For achieving an outstanding sales increase of 8.9.0% from January 1997 through May 1997

*Stuart Mathis*

Stuart Mathis, Vice President of Franchise Operations

*Thomas S. Monaghan*

Thomas S. Monaghan, President

*8 thru 5*

Period

# DOMINO'S PIZZA, INC.

## Shamrock Challenge

Domino's Pizza, Incorporated, Team Northeast
hereby expresses its appreciation to

Chris Shaffer, store #8676

For achieving an outstanding sales increase of 200.8%
from August 1996 through November 1996

_Stuart Mathis_
Stuart Mathis, Vice President of Franchise Operations

_Thomas S. Monaghan_
Thomas S. Monaghan, President

9 thru 12
Period



Silver Challenge

presented to

*Chris Shaffer*

*Manager of Store #3676*

for achieving at least a 25% increase in sales for four consecutive periods.

Stuart Mathis, Vice President of Franchise Operations

Thomas S. Monaghan, President

*10 through 18*
Periods

Exhibit "C"



Staten Island 2002 sales vs 2001 sales by store YTD



Staten Island 2002 sales vs 2001 sales by store YTD

■ 3529 □ 3673 □ 3676 ■ 3512
SEU next



Chris Shaffer's Franchise Average Sales Increases for 2002



Staten Island Sales by Store

Exhibit "D"

## DOMINO'S PIZZA LLC
## FRANCHISE APPLICATION

### REQUIRED DOCUMENTS *

☐ Copy of drivers license (front & back) – first time applicants only

☐ Copy of Franchise Development Certificate – first time applicants only

☐ Proof of all funds that are listed on Page 7 Box B (current within 30 days) – all applicants

☒ Letter of Intent signed & dated by buyer & seller – purchases only

☐ Sellers most recent profit & loss statement with year-to-date information – purchases only

☐ Applicants most recent financial statements (profit & loss, balance sheet, cash flow statements) with year-to-date information – existing franchisees only

* Please be advised, upon review of this application, Domino's Pizza LLC may require you to submit additional information.

### APPLYING FOR

**Projected Opening/Transfer Date:** _____

☒ Purchase      Store(s) # **3512** _____      Seller **Alex Poliakov**

☐ Build      ☐ Refranchise                  DMA **New York**

☐ Traditional   ☐ C-Store   ☐ Pizzazz      City/State **Staten Island NY**

☐ Store within Development Agreement

☐ New Development Agreement*

**\*Fill in below for New Developments ONLY**

| DMA | Territory ID | Projected Opening Date |
|-----|-------------|------------------------|
|     |             |                        |
|     |             |                        |
|     |             |                        |

Are you being sponsored? ☐ yes   ☒ no   If yes, name of sponsor _____

### PERSONAL INFORMATION

Full Name **Ian Br008**

Mailing Address **23 Coachman Ln**

City **Levittown** State **N.Y** Zip **11756**

Home Address **23 Coachman Ln**

City **Levittown** State **N.Y** Zip **11756**

Social Security # **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**

Office Phone **516-432-1234**

Cellular Phone **516-375-7848**

Pager Number _____

Fax Number **516-432-5074**

E-mail Address **Ccz.001f-la.Aol.com**

# OTHER PERSONAL INFORMATION

1. Are you or your spouse currently involved or participation in any investments/other business? ☒ yes ☐ no
   If so, please attach detailed letter explaining financial & operational obligations  *Domino's Pizza*

2. Have you ever been convicted of anything other than minor traffic violations?  Has any judgement ever been entered against you or your company or your employer where you were one of the litigants?  Are you involved in pending litigation?  Have you ever declared personal bankruptcy or has a corporation or partnership in which you were an owner, officer, or director, filed bankruptcy? ☐ yes ☒ no  If so, explain:

   _____

   _____

3. If you are a first-time applicant, please indicate your previous one year Domino's employment history

   Store #_____   Emp. Dates ____/____ to ___/____   Position _____
   Employer's Name _____   Phone # _____
   Store #_____   Emp. Dates ____/____ to ___/____   Position _____
   Employer's Name _____   Phone # _____

## MONEY NEEDED TO PURCHASE, BUILD OR REFRANCHISE A STORE

| A. PURCHASE/BUILD/REFRANCHISE | | B. FUNDS AVAILABLE (list only those funds you will liquidate) | |
|---|---|---|---|
| Purchase Price | $ 500,000- | **Corporation/Business Funds:** | |
| | | Cash in bank – checking account | $ 21,500 |
| Franchise Fee | $ 1,500- | Cash in bank – savings account | $ |
| Grand Opening advertising expenses | $ | **Personal Funds:** | |
| Equipment (purchase or lease deposit) | $ | Cash in bank – checking account | $ |
| Leasehold preparation | $ | Cash in bank – savings account | $ |
| Rent deposit | $ | Certificates of deposit (net of penalties) | $ |
| Monthly or prepaid rent | $ | 401K (net penalties & taxes) | $ |
| Monthly or prepaid property taxes | $ | Securities/Investments | $ |
| Monthly or prepaid utility & phone deposit | $ | Other | $ |
| Signs | $ | | |
| Permits and licenses | $ | **Loan Commitment Letter w/Terms** | |
| Prepaid insurance (inc. workman's comp) | $ | Amount of loan | $ |
| Accounting and legal | $ | Name of bank/ institution | |
| Moving expenses (if applicable) | $ | *100% Finance By Seller* 500,000 | |
| Opening store tills(s) | $ | Amount of loan | $ |
| Base inventory | $ | Name of bank / institution | |
| Financing fees/closing costs | $ | | |
| Computer expense | $ | Gifted monies (must include gift letter & proof of funds) $ | |
| Software re-licensing fees | $ | **Funds Obtainable From Outside Investor(s)** | |
| Pre-opening/training expenses | $ | Investor _____ | $ |
| Advertising (pre-pd yellow pgs, ADVO) | $ | Investor _____ | $ |
| Salaries & wages | $ | Investor _____ | $ |
| Uniforms | $ | Investor _____ | $ |
| | | For new ownership structures:  All outside investors must submit a separate application & are subject to final approval of Domino's Pizza LLC | |
| TOTAL | $ 501,500 | TOTAL | $ 521,500 |

| AVAILABLE WORKING CAPITAL:  B – A | TOTAL | $ 20,000 |
|---|---|---|

# FRANCHISE OWNERSHIP INFORMATION

☐ Sole Proprietor   ☒ Corporation   ☐ Partnership   ☐ Limited Liability Company (LLC)

Name of Corporation/Partnership/LLC   _To be registered_

Federal ID # _____

| Name of Owner | Address City/State/Zip | Phone | % of Ownership | Ownership Type |
|---|---|---|---|---|
| Ian Brauch | N/A | N/A | 51 | Approved Franchise |
| Chris Shaffer | 127 Silver Lane Rd St. Island NY 103D1 | (917) 837-65 82 | 49 | Outside Investr |
| | | | | |
| | | | | |

## ADDITIONAL INFORMATION

_____

_____

_____

_____

_____

I certify that the information contained herein, including financial information, is current within thirty (30) days and accurate to the best of my knowledge. In addition, I give Domino's Pizza LLC permission to obtain credit records, motor vehicle reports, and conduct criminal investigations, at this time and from time-to-time thereafter, and I release Domino's Pizza LLC and/or its agents and any person or entity which provides information pursuant to this authorization, from any and all liabilities, claims or causes of action in regards to the information obtained from any and all of the reference sources used.

I hereby acknowledge and agree that in the event Domino's Pizza LLC approves me to own and operate a Domino's Pizza Store, I will not open or otherwise operate the Domino's Pizza Store prior to Domino's Pizza LLC's execution of my Standard Franchise Agreement.

Applicant's Signature   _Ian Branch_   Date _6/1/02_

Send complete application to:
Domino's Pizza LLC
30 Frank Lloyd Wright Drive
P.O. Box 997
Ann Arbor, MI 48106-0997
Attn: Franchise Services
(734) 930-3785 / phone
(734) 668-0342 / fax

# LETTER OF INTENT

I. Alex Poliakov, agree to sell, and Ian Branch agrees to purchase my Domino's Pizza store located in Staten Island, New York. The stores are listed below.

Store #          Address
3512             280 Broadway, Staten Island, NY

The sale price for said store is $500,000. This Letter of Intent will remain valid for 60 days and may be nullified by either party at any time prior to the expiration of this agreement. This sale is contingent upon acceptable financing terms and approval by Domino's Pizza LLC

_____          _____
Alexandre Poliakov                        Ian Branch



To whom it may
Concern:

I, Alex Poliakov DP. franchisee of store
572 am submitting this letter as
a formal commitment to:
1. Sell my store to Ian Branch
2. Lend Ian Branch $ 43,000
as working capital from my bank
account.
3. Finance $ 500,000 for next 10 years
his purchase of my store

6/6/02

Alex Poliakov

Delivering a Million Smiles a Day.

Domino's Pizza, Inc. ✦ 30 Frank Lloyd Wright Drive ✦ P.O. Box 997 ✦ Ann Arbor, Michigan 48106-0997 ✦ Telephone: 734-930-3030

Compliments of Express Printing Inc. • Tel: 281-873-4362 • Fax: 281-873-1211

**REQUIRED DOCUMENTS**

- ☐ Copy of drivers license (front & back) – first time applicants only
- ☐ Copy of Franchise Development Certificate – first time applicants only
- ☐ Proof of all funds that are listed on Page 2, Box B (current within 30 days) – all applicants
- ☒ Letter of Intent signed & dated by buyer & seller – purchases only
- ☐ Sellers most recent profit & loss statement with year-to-date information – purchases only
- ☐ Applicants most recent financial statements (profit & loss, balance sheet, cash flow statements) with year-to-date information – existing franchisees only

\* Please be advised, upon review of this application, Domino's Pizza LLC may require you to submit additional information.

## APPLYING FOR

Projected Opening/Transfer Date _____

- ☐ Build
- ☐ Refranchise
- ☐ Traditional
- ☐ C-Store
- ☐ Pizzazz
- ☐ Store within Development Agreement
- ☐ New Development Agreement\*

Store# _____  Seller _____

DMA _New York_

City/State _Staten Island, NY_

\*Fill in below for New Developments ONLY

| DMA | Territory ID | Projected Opening Date |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

## PERSONAL INFORMATION

Full Name _Ian Branch_

Mailing Address _23 Coachman Ln_

City _Levittown_  State _N.Y._  Zip _11756_

Home Address _23 Coachman Ln_

City _Levittown_  State _N.Y._  Zip _11756_

Driver's License # _992 363 306_  State ___

Of which country are you a citizen? _U.S._

Social Security # _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_

Office Phone _516-432-1234_

Cellular Phone _516-375-7848_

Pager Number _____

Fax Number _516-432-5074_

E mail Address _Cozy01Fol@Aol.com_

Home Phone _____

If other than US, submit a copy of your Alien Registration Card (front & back)

-1-

## OTHER PERSONAL INFORMATION

1. Are you or your spouse currently involved or participation in any investments/other business? ☐ yes ☐ no
   If so, please attach detailed letter explaining financial & operational obligations.

2. Have you ever been convicted of anything other than minor traffic violations? Has any judgement ever been entered against you or your company or your employer where you were one of the litigants? Are you involved in pending litigation? Have you ever declared personal bankruptcy or has a corporation or partnership in which you were an owner, officer, or director, filed bankruptcy? ☐ yes ☐ no  If so, explain:

   _____

   _____

3. If you are a first-time applicant, please indicate your previous one year Domino's employment history

   Store #_____    Emp. Dates    ___/___ to ___/___    Position    _____

   Employer's Name    _____    Phone #    _____

   Store #_____    Emp. Dates    ___/___ to ___/___    Position    _____

   Employer's Name    _____    Phone #    _____

## MONEY NEEDED TO PURCHASE, BUILD OR REFRANCHISE A STORE

| A. PURCHASE/BUILD/REFRANCHISE | | B. FUNDS AVAILABLE (list only those funds you will liquidate) | |
|---|---|---|---|
| Purchase Price | $ 1,800,000 | **Corporation/Business Funds:** | |
| Franchise Fee | $ 4,500 | Cash in bank – checking account | $ 21,500 |
| Grand Opening advertising expenses | $_____ | Cash in bank – savings account | $_____ |
| Equipment (purchase or lease deposit) | $_____ | **Personal Funds:** | |
| Leasehold preparation | $_____ | Cash in bank – checking account | $_____ |
| Rent deposit | $_____ | Cash in bank – savings account | $_____ |
| Monthly or prepaid rent | $_____ | Certificates of deposit (net of penalties) | $_____ |
| Monthly or prepaid property taxes | $_____ | 401K (net penalties & taxes) | $_____ |
| Monthly or prepaid utility & phone deposit | $_____ | Securities/Investments | $_____ |
| Signs | $_____ | Other _____ | $_____ |
| Permits and licenses | $_____ | | $_____ |
| Prepaid insurance (inc. workman's comp) | $_____ | **Loan Commitment Letter w/Terms** | |
| Accounting and legal | $_____ | Amount of loan | $_____ |
| Moving expenses (if applicable) | $_____ | Name of bank/ instutution | |
| Opening store tills(s) | $_____ | 100% Finance by Seller | 1,800,000 |
| Base Inventory | $_____ | Amount of loan | $_____ |
| Financing fees/closing costs | $_____ | Name of bank / institution | |
| Computer expense | $_____ | | |
| Software re-licensing fees | $_____ | Gifted monies (must exclude gift letter & proof of funds) $_____ | |
| Pre-opening/training expenses | $_____ | **Funds Obtainable From Outside Investor(s)** | |
| Advertising (pre-pd yellow pgs. ADVO) | $_____ | Investor _____ | $_____ |
| Salaries & wages | $_____ | Investor _____ | $_____ |
| Uniforms | $_____ | Investor _____ | $_____ |
| | | Investor _____ | $_____ |
| | | For new ownership structures: All outside investors must submit a separate application & are subject to final approval of Domino's Pizza LLC. | |
| **TOTAL** | $ 1,804,500 | **TOTAL** | $ 1,821,500 |

| AVAILABLE WORKING CAPITAL: | B – A | TOTAL | $ 17,000 |
|---|---|---|---|

## FRANCHISE OWNERSHIP INFORMATION

☐ Sole Proprietor   ☒ Corporation   ☐ Partnership   ☐ Limited Liability Company (LLC)

Name of Corporation/Partnership/LLC _To be registered_

Federal ID # _____

| Name of Owner | Address City/State/Zip | Phone | % of Ownership | Ownership Type |
|---|---|---|---|---|
| Ian Branch | N/A | N/A | 51 | Approved Franchisee |
| Chris Shaffer | 127 Silver Lane Rd St. Island NY 10301 | (917) 837-6582 | 49 | Outside Investor |
| | | | | |
| | | | | |

## ADDITIONAL INFORMATION

_____
_____
_____
_____
_____

I certify that the information contained herein, including financial information, is current within thirty (30) days and accurate to the best of my knowledge. In addition, I give Domino's Pizza LLC permission to obtain credit records, motor vehicle reports, and conduct criminal investigations, at this time and from time-to-time thereafter, and I release Domino's Pizza LLC and/or its agents and any person or entity which provides information pursuant to this authorization, from any and all liabilities, claims or causes of action in regards to the information obtained from any and all of the reference sources used.

I hereby acknowledge and agree that in the event Domino's Pizza LLC approves me to own and operate a Domino's Pizza Store, I will not open or otherwise operate the Domino's Pizza Store prior to Domino's Pizza LLC's execution of my Standard Franchise Agreement.

Applicant's Signature _Ian Branch_   Date _6/1/02_

Send complete application to:
Domino's Pizza LLC
30 Frank Lloyd Wright Drive
P.O. Box 997
Ann Arbor, MI 48106-0997
Attn: Franchise Services
(734) 930-3785 / phone
(734) 668-0342 / fax

-3-

# LETTER OF INTENT

I, Chris Shaffer, agree to sell, and Ian Branch agrees to purchase my three Domino's Pizza stores located in Staten Island, New York. The stores are listed below:

| Store # | Address |
|---------|---------|
| 3529 | 1300 Hylan Blvd. Staten Island, NY |
| 3676 | 1430 Richmond Ave. Staten Island, NY |
| 3673 | 3902 Richmond Ave. Staten Island, NY |

The sale price for said stores is $1,800,000. This Letter of Intent will remain valid for 60 days and may be nullified by either party at any time prior to the expiration of this agreement. This sale is contingent upon acceptable financing terms and approval by Domino's Pizza LLC.


_____          _____
Chris Shaffer                     Ian Branch

From: Chris Shaffer  To: Alexandre Poliakov

## Financing Proposal
This is a proposal not a binding agreement

June 7, 2002

I, Chris Shaffer, propose to finance the buyer, Ian Branch, the full purchase price of $1,800,000 for Domino's Pizza stores 3529, 3673, and 3676. This proposal is contingent upon approval from Domino's Pizza L.L.C. for Ian Branch to purchase said Domino's Pizza stores, all located in Staten Island, New York as well as other factors. Repayment terms will be finalized at the closing but the periodic payment will not exceed stores same period cash flow.

_____

Chris Shaffer

Exhibit "E"



## NOTICE OF TERMINATION

### Personal and Confidential

June 21, 2002

BY CERTIFIED MAIL AND REGULAR MAIL
#7160 3901 9844 5880 5299

Mr. Alexandre Poliakov
Sell More Pizza, Inc.
2625 Emmons Ave. #1-B ˇ
Brooklyn, NY 11235

Dear Mr. Poliakov:

Please consider this letter to be official notification of termination of the Standard Franchise Agreement dated September 2, 1999, for Store 3512, located at 280 Broadway, Staten Island, NY 10310, by and between Sell More Pizza, Inc. and Domino's Pizza and all franchise rights thereunder. **The termination of the Franchise Agreement is effective June 24, 2002.**

This termination is based on your consistent failures to, at all times, maintain minimum insurance coverage, as required by Paragraph 18 ("TERMINATION AND EXPIRATION") of the Franchise Agreement. You have failed to provide proof of comprehensive general liability, motor vehicle liability, property insurance, workman's compensation insurance (as required by applicable law or such other comparable insurance as required by us), an umbrella policy, and such other insurance as the company requires. As you know, you were previously advised of your default under the Franchise Agreement in our official notification of default dated June 11, 2002. To date, the default has not been cured.

**However, Domino's Pizza hereby agrees to stay legal proceedings to enforce the termination, until July 24, 2002.** This will afford you the opportunity to sell your Store to a purchaser who is acceptable to Domino's Pizza, while also preserving the rights of Domino's Pizza under the Standard Franchise Agreement. Domino's Pizza's agreement to stay enforcement of the termination is specifically conditioned on, among other things, its option to purchase the assets of the Store being extended by a corresponding period of time. During the stay, the Store must be operated in accordance with the terms and conditions of the Franchise Agreement, with the exception that you may not offer delivery service. Due to the seriousness of this violation, you may operate as carry-out only. The time within which Domino's Pizza may exercise its option to purchase the assets of the Store will not begin to run. If you fail to comply with the Franchise Agreement, Domino's Pizza reserves the right to immediately and unilaterally lift the stay and enforce the termination.

In the event this stay is lifted by Domino's Pizza or in the event you are unable to consummate the sale of Store #3529, please be advised that the Franchise Agreement imposes certain obligations on you upon termination. Specifically, you must:

1. Immediately pay all royalty fees, advertising contributions and other charges as have or will hereafter become due and remain unpaid.

2. Immediately return to Domino's ....

**Domino's Pizza** ‑ 30 Frank Lloyd Wright Drive ‑ P.O. Box 997 ‑ Ann Arbor, MI 48106-0997 ‑ 734-930-3030

Mr. Alexandre Poliakov
Sell More Pizza, Inc.
June 21, 2002
Page Two

3.  Cancel all assumed name or equivalent registrations relating to the use of any Domino's Pizza mark.

4.  Notify the telephone company and all listing agencies of the termination of your right to use all telephone numbers and all classified and other directory listings and authorize same to be transferred to Domino's Pizza or its designee.

5.  Not, directly or indirectly, in any manner identify yourself, the premises which was occupied by the Store or any business as a Domino's Pizza store, a former Domino's Pizza store, or as a franchisee of or otherwise associated with the company or use in any manner or for any purpose any mark or other indicia of a Domino's Pizza store.

6.  At your expense, make such reasonable modifications to the interior and exterior of the store, as the Company requires, to de-identify the premises as a Domino's Pizza store.

In addition, Paragraph 20.2 ("Post-Term Covenant") of the Franchise Agreement provides in relevant part, that for a period of one (1) year commencing on the effective date of termination or expiration of the Franchise Agreement you may not, engage in, be employed by, advise, assist, invest in, franchise, make loans to, or have any other interest in, any carry-out or delivery pizza store business located at the premises of the store or within ten (10) miles of the premises of the store (except for other Domino's Pizza Stores operated under franchise agreements entered into between franchisee and the company or other Domino's Pizza Stores in which franchisee shall have an ownership interest).

Domino's Pizza intends to take all action it deems necessary to enforce its rights under the Franchise Agreement and expressly reserves the right to pursue any and all remedies available to it under the Franchise Agreement or state law.  Your immediate attention to this matter is required.

Sincerely,

*Valerie J. Clark*

Valerie J. Clark
Senior Legal Administrator
Franchise Services
(734) 930-3773

cc:   Sandy Jamerson

Copy sent Regular Mail to:  200 Broadway, Staten Island, NY

Exhibit "F"



By UPS Express: 1ZA32V90221OO12513

June 25, 2002

Mr. Chris Shaffer
127 Silver Lake Road
Staten Island, NY 10301

Dear Mr. Shaffer:

We received an inter-office memorandum stating that the Standard Franchise Agreement for stores 3529 and 3676 has been terminated and will be enforced July 24, 2002. Domino's Pizza policy requires a store be placed on Collection On Delivery (C.O.D.), if any of the following occur:

- Payments received late twice within an eight week period
- Any payment returned due to NSF
- Past due balances not received prior to the next delivery
- Financial Default with any Domino's Pizza, LLC entity
- Operational Default with any Domino's Pizza, LLC entity

Your stores 3529, 3673, and 3676 have been placed on COD status. All future profit sharing and volume discount checks will be applied toward the past due balance. Interest will be charged on the past due amount at the rate of .25% per week, or the maximum rate allowed by law, whichever is less. We will require payment via telephone on each day a food order is placed for the invoiced amount prior to 7:00pm plus an additional payment of **$700.00** on store #3529, **$500.00** on store #3673 and **$575.00** on store #3676 or **$5,325.00 per week**, that will be applied toward the balance of **$22,989.44.**

A copy of your account is enclosed and the total balance outstanding is $22,989.44. Your stores are receiving three deliveries per week. Your additional payment per week must total $5,325.00.

We regret having to take this course of action and hope to get this issue cleared up quickly. Someone from the distribution center will call Alex Poliakov's cell phone # 917.837.7308 per your request with the invoice total by 6:30pm. If they do not call, Alex must call me at extension 227, Bob at 248, or Pat at 249. Alex must be sure to make the payment before 7:00 pm or your stores will forfeit delivery, holidays included. If a subsequent delivery or special arrangement is required to re-deliver the products, an additional delivery charge will be assessed. If you have any questions, please feel free to call me at 1-800-375-4362 extension 227.

Sincerely,

*Copy*

Janice Lombard
Site Accountant

Cc: Alex Poliakov



1ZA32V902210012371

June 25, 2002

Mr. Alex Poliakov
Apt. 1B
2625 Emmons Avenue
Brooklyn, NY 11235

Dear Mr. Poliakov:

We received an inter-office memorandum stating that the Standard Franchise Agreement for store
#3512 has been terminated and will be enforced July 24, 2002. Domino's Pizza policy requires a
store be placed on Collection On Delivery (C.O.D.), if any of the following occur:

- Payments received late twice within an eight week period
- Any payment returned due to NSF
- Past due balances not received prior to the next delivery
- Financial Default with any Domino's Pizza, LLC entity
- Operational Default with any Domino's Pizza, LLC entity

Your store #3512 has been placed on COD status. All future profit sharing and volume discount
checks will be applied toward the past due balance. Interest will be charged on the past due
amount at the rate of .25% per week, or the maximum rate allowed by law, whichever is less. We
will require payment via telephone on each day a food order is placed for the invoiced amount
before 7:00 pm plus an additional payment of **$500.00** or **$1,500.00 per week**, that will be
applied toward the balance of **$6,665.30.**

A copy of your account is enclosed and the total balance outstanding is $6,665.30. Your store is
receiving three deliveries per week. Your additional payment per week must total $1,500.00.

We regret having to take this course of action and hope to get this issue cleared up quickly.
Someone from the distribution center will call your cell phone # 917.837.7308 with the invoice
total by 6:30pm. If they do not call, please call me at extension 227, Bob at 248, or Pat at 249.
Please be sure to make the payment before 7:00pm or you will forfeit delivery, holidays included.
If a subsequent delivery or special arrangement is required to re-deliver the products, an
additional delivery charge will be assessed. If you have any questions, please feel free to call me
at 1-800-375-4362 extension 227.

Sincerely,

Janice Lombard
Janice Lombard
Site Accountant

**Connecticut Distribution Center**
14 International Drive, E. Granby, CT 06026 • Telephone: 860-653-8910 Fax: 860-653-8914

Exhibit "G"

# Mitchell J. Kassoff
## Attorney at Law
### Two Foster Court
### So. Orange, N.J. 07079-1002

**(973) 762-1776**
**Facsimile (973) 762-1811**

franchise.law@verizon.net
www.concentric.net/~franatty

217 Broadway- 10th Fl.
New York, N.Y. 10007-2998

June 26, 2002

**VIA FACSIMILE**
(734) 668-0342
Ms. Valerie J. Clark
Senior Legal Administrator
Domino's Pizza LLC

Re: Chris Shaffer, Staten Island, N.Y.- Stores 3529, 3673 & 3676
    Alexandre Poliakov, Staten Island, N.Y.- Store 3512

Dear Ms. Clark:

I have been retained by Messrs. Shaffer and Poliakov regarding their Domino's franchises and their relationship with Domino's. Quite simply, they wish to continue to operate their franchises without being harassed and discriminated against by Domino's. My clients have no desire to sell their franchises and resent the improper pressure that you are bringing to bear. I also note that the conditions that Domino's requires for a sale of a franchise would be difficult or impossible to meet within the thirty day time period stated in your correspondence.

The items that Domino's cites in its letters are obviously a subterfuge to attempt to allow Domino's to attempt to take the benefit the businesses for which my clients have labored and developed into profitable entities. I also note that your new requirements for product to be paid on a C.O.D. basis and not to allow deliveries are an obvious device to force my clients out of business. In any event, I have been informed that all problems of which Domino's complained have been rectified.

Litigation will not be in the interests of anyone. I propose a very simple solution to this situation. Withdraw all termination letters and notifications and allow my clients to continue to operate their franchises on the normal credit terms and sales methods which will be in everyone's benefit.

Very truly yours,

*Kassoff*

MJK:ms

# Mitchell J. Kassoff
## Attorney at Law
### Two Foster Court
### So. Orange, N.J. 07079-1002

(973) 762-1776.
Facsimile (973) 762-1811

franchise.law@verizon.net
www.concentric.net/~franatty

217 Broadway- 10th Fl.
New York, N.Y. 10007-2998

June 26, 2002

**VIA FACSIMILE**
(860) 653-8914
Ms. Janice Lombard
Site Accountant
Domino's Pizza LLC

Re: Chris Shaffer, Staten Island, N.Y.- Stores 3529, 3673 & 3676
    Alexandre Poliakov, Staten Island, N.Y.- Store 3512

Dear Ms. Lombard:

I have been retained by Messrs. Shaffer and Poliakov regarding their Domino's franchises and their relationship with Domino's. The placing of their franchises on Operational Default was improper.

By taking the actions stated in your letters of June 25, 2002, you are causing my clients continuing damages. My clients wish to continue to operate their franchises without being damaged, harassed and discriminated against by Domino's.

I request that you reconsider these actions and allow my clients to continue to operate their franchises on the normal credit terms and sales methods, which will be in everyone's benefit.

Very truly yours,

*Kassoff*

MJK:ms

Exhibit "H"



## ENFORCEMENT OF TERMINATION

### Personal and Confidential

June 27, 2002

**HAND DELIVERY**

Mr. Christopher M. Shaffer
Richmond Pizza Inc.
127 Silver Lake Road
Staten Island, NY 10301

Dear Mr. Shaffer:

Pursuant to the termination letter dated June 21, 2002, your Standard Franchise Agreement dated January 5, 1996, for Store #3676 located at 1430 Richmond Avenue, Staten Island, NY 10314 was terminated effective June 24, 2002. This termination was based on your failure to provide proof of all insurance coverage and repeated violations.

However, Domino's Pizza stayed the enforcement of the termination for a period of time, but only if you complied with all of the necessary conditions listed in our letter to you dated June 21, 2002. You have failed or refused to comply with the conditions of the June 21, 2002 letter, including but not limited to maintaining proper insurance coverage and operating in compliance with standards.

Therefore, Domino's Pizza is immediately enforcing the termination of the Franchise Agreement dated January 5, 1996 for Store #3676. Please be advised that the Franchise Agreement imposes certain obligations on you upon termination. Specifically, you must:

1) Immediately pay all royalty fees, advertising contributions and other charges as have or will hereafter become due and remain unpaid.

2) Immediately return to Domino's Pizza all copies of the Operating Manual.

3) Cancel all assumed name or equivalent registrations relating to the use of any Domino's Pizza mark.

4) Notify the telephone company and all listing agencies of the termination of your right to use all telephone numbers and all classified and other directory listings and authorize same to be transferred to Domino's Pizza or its designee.

5) Not, directly or indirectly, in any manner, identify yourself, the premises which was occupied by the Store, or any business as a Domino's Pizza store, a former Domino's Pizza store, or as a franchisee of or otherwise associated with the company or use in any manner or for any purpose any mark or other indicia of a Domino's Pizza store.

*"Exceptional People on a Mission to be the Best Pizza Delivery Company in the World"*

**Domino's Pizza, LLC.** ◆ 857 Elkridge Landing Road ◆ Suite 500 ◆ Linthicum Heights, Maryland 21090-2928 ◆ Telephone: 410-859-3030

Mr. Christopher M. Shaffer
Richmond Pizza Inc.
June 27, 2002
Page Two

6) At your expense, make such reasonable modifications to the interior and exterior of the store, as the Company requires to de-identify the premises as a Domino's Pizza store.

In addition, Paragraph 20.2 ("Post-Term Covenant") of the Franchise Agreement provides in relevant part, that for a period of one (1) year commencing on the effective date of termination or expiration of the Franchise Agreement you may not, engage in, be employed by, advise, assist, invest in, franchise, make loans to, or have any other interest in, any carryout or delivery pizza store business located at the premises of the store or within ten (10) miles of the premises of the store (except for other Domino's Pizza Stores operated under Franchise Agreements entered between franchisee and the company or other Domino's Pizza stores in which franchisee shall have an ownership interest).

Domino's Pizza intends to take all necessary action to enforce its right under the Franchise Agreement and expressly reserves the right to pursue any and all remedies available to it under the Franchise Agreement(s) or state law.  Your immediate attention to this matter is required.

Sincerely,

Scott D. Hoots
Franchise Operations Director
Baltimore Zone Office



**ENFORCEMENT OF TERMINATION**

**Personal and Confidential**

June 27, 2002

**HAND DELIVERY**

Mr. Christopher M. Shaffer
Al's Hylan, Inc.
127 Silver Lake Road
Staten Island, NY  10301

Dear Mr. Shaffer:

Pursuant to the termination letter dated June 21, 2002, your Standard Franchise Agreement
dated December 9, 1996, for Store #3529 located at 1300 Hylan Blvd., Staten Island, NY
10304 was terminated effective June 24, 2002.  This termination was based on your failure to
provide proof of all insurance coverage and repeated violations.

However, Domino's Pizza stayed the enforcement of the termination for a period of time, but
only if you complied with all of the necessary conditions listed in our letter to you dated June
21, 2002.  You have failed or refused to comply with the conditions of the June 21, 2002
letter, including but not limited to maintaining  proper insurance coverage and operating in
compliance with standards.

Therefore, Domino's Pizza is immediately enforcing the termination of the Franchise
Agreement dated December 9, 1996 for Store #3529.  Please be advised that the Franchise
Agreement imposes certain obligations on you upon termination.  Specifically, you must:

1) Immediately pay all royalty fees, advertising contributions and other charges as have or will
   hereafter become due and remain unpaid.

2) Immediately return to Domino's Pizza all copies of the Operating Manual.

3) Cancel all assumed name or equivalent registrations relating to the use of any Domino's
   Pizza mark.

4) Notify the telephone company and all listing agencies of the termination of your right to
   use all telephone numbers and all classified and other directory listings and authorize same
   to be transferred to Domino's Pizza or its designee.

5) Not, directly or indirectly, in any manner, identify yourself, the premises which was
   occupied by the Store, or any business as a Domino's Pizza store, a former Domino's Pizza
   store, or as a franchisee of or otherwise associated with the company or use in any manner
   or for any purpose any mark or other indicia of a Domino's Pizza store.

*"Exceptional People on a Mission to be the Best Pizza Delivery Company in the World"*

**Domino's Pizza, LLC.**  ◆  857 Elkridge Landing Road  ◆  Suite 500  ◆  Linthicum Heights, Maryland 21090-2928  ◆  Telephone: 410-859-3030

Mr. Christopher M. Shaffer
Al's Hylan, Inc.
June 27, 2002
Page Two

6) At your expense, make such reasonable modifications to the interior and exterior of the store, as the Company requires to de-identify the premises as a Domino's Pizza store.

In addition, Paragraph 20.2 ("Post-Term Covenant") of the Franchise Agreement provides in relevant part, that for a period of one (1) year commencing on the effective date of termination or expiration of the Franchise Agreement you may not, engage in, be employed by, advise, assist, invest in, franchise, make loans to, or have any other interest in, any carryout or delivery pizza store business located at the premises of the store or within ten (10) miles of the premises of the store (except for other Domino's Pizza Stores operated under Franchise Agreements entered between franchisee and the company or other Domino's Pizza stores in which franchisee shall have an ownership interest).

Domino's Pizza intends to take all necessary action to enforce its right under the Franchise Agreement and expressly reserves the right to pursue any and all remedies available to it under the Franchise Agreement(s) or state law.   Your immediate attention to this matter is required.

Sincerely,

Scott D. Hoots
Franchise Operations Director
Baltimore Zone Office



**ENFORCEMENT OF TERMINATION**

**Personal and Confidential**

June 27, 2002

**HAND DELIVERY**

Mr. Christopher M. Shaffer
Chris Amboy Pizza Inc.
127 Silver Lake Road
Staten Island, NY 10301

Dear Mr. Shaffer:

Pursuant to the termination letter dated April 4, 2002, your Standard Franchise Agreement dated October 31, 1998, for Store #3673 located at 3902 Richmond Ave., Staten Island, NY 10312 was terminated effective April 7, 2002. This termination was based on repeated violations.

However, Domino's Pizza stayed the enforcement of the termination to allow you to sell your store to an acceptable purchaser. To date no store sale has occurred. In addition, you have failed or refused to comply with the conditions of the stay, including but not limited to maintaining proper insurance coverage.

Therefore, Domino's Pizza is immediately enforcing the termination of the Franchise Agreement dated October 31, 1998 for Store #3673. Please be advised that the Franchise Agreement imposes certain obligations on you upon termination. Specifically, you must:

1) Immediately pay all royalty fees, advertising contributions and other charges as have or will hereafter become due and remain unpaid.

2) Immediately return to Domino's Pizza all copies of the Operating Manual.

3) Cancel all assumed name or equivalent registrations relating to the use of any Domino's Pizza mark.

4) Notify the telephone company and all listing agencies of the termination of your right to use all telephone numbers and all classified and other directory listings and authorize same to be transferred to Domino's Pizza or its designee.

5) Not, directly or indirectly, in any manner, identify yourself, the premises which was occupied by the Store, or any business as a Domino's Pizza store, a former Domino's Pizza store, or as a franchisee of or otherwise associated with the company or use in any manner or for any purpose any mark or other indicia of a Domino's Pizza store.

*"Exceptional People on a Mission to be the Best Pizza Delivery Company in the World"*

**Domino's Pizza, LLC.** ◆ 857 Elkridge Landing Road ◆ Suite 500 ◆ Linthicum Heights, Maryland 21090-2928 ◆ Telephone: 410-859-3030

Mr. Christopher M. Shaffer
Chris Amboy Pizza Inc.
June 27, 2002
Page Two

6)  At your expense, make such reasonable modifications to the interior and exterior of the
    store, as the Company requires to de-identify the premises as a Domino's Pizza store.

In addition, Paragraph 20.2 ("Post-Term Covenant") of the Franchise Agreement provides in
relevant part, that for a period of one (1) year commencing on the effective date of termination
or expiration of the Franchise Agreement you may not, engage in, be employed by, advise,
assist, invest in, franchise, make loans to, or have any other interest in, any carryout or delivery
pizza store business located at the premises of the store or within ten (10) miles of the
premises of the store (except for other Domino's Pizza Stores operated under Franchise
Agreements entered between franchisee and the company or other Domino's Pizza stores in
which franchisee shall have an ownership interest).

Domino's Pizza intends to take all necessary action to enforce its right under the Franchise
Agreement and expressly reserves the right to pursue any and all remedies available to it under
the Franchise Agreement(s) or state law.  Your immediate attention to this matter is required.

Sincerely,

Scott D. Hoots
Franchise Operations Director
Baltimore Zone Office



**ENFORCEMENT OF TERMINATION**

**Personal and Confidential**

June 27, 2002

**HAND DELIVERY**

Mr. Alexandre Poliakov
Sell More Pizza, Inc.
2625 Emmons Ave. #1-B
Brooklyn, NY 11235

Dear Mr. Poliakov:

Pursuant to the termination letter dated June 21, 2002 your Standard Franchise Agreement dated September 2, 1999, for Store #3512 located at 280 Broadway, Staten Island, NY 10310 was terminated effective June 24, 2002. This termination was based on your failure to maintain proper insurance coverage.

However, Domino's Pizza stayed the enforcement of the termination for a period of time but only if you complied with all of the necessary conditions listed in our letter to you dated June 21, 2002. You have failed or refused to comply with the conditions of the June 21, 2002 letter, including but not limited to maintaining proper insurance coverage and operating in compliance with standards.

Therefore, Domino's Pizza is immediately enforcing the termination of the Franchise Agreement dated September 2, 1999 for Store #3512. Please be advised that the Franchise Agreement imposes certain obligations on you upon termination. Specifically, you must:

1) Immediately pay all royalty fees, advertising contributions and other charges as have or will hereafter become due and remain unpaid.

2) Immediately return to Domino's Pizza all copies of the Operating Manual.

3) Cancel all assumed name or equivalent registrations relating to the use of any Domino's Pizza mark.

4) Notify the telephone company and all listing agencies of the termination of your right to use all telephone numbers and all classified and other directory listings and authorize same to be transferred to Domino's Pizza or its designee.

5) Not, directly or indirectly, in any manner, identify yourself, the premises which was occupied by the Store, or any business as a Domino's Pizza store, a former Domino's Pizza store, or as a franchisee of or otherwise associated with the company or use in any manner or for any purpose any mark or other indicia of a Domino's Pizza store.

*"Exceptional People on a Mission to be the Best Pizza Delivery Company in the World"*

**Domino's Pizza, LLC.** ◆ 857 Elkridge Landing Road ◆ Suite 500 ◆ Linthicum Heights, Maryland 21090-2928 ◆ Telephone: 410-859-3030

Mr. Alexandre Poliakov
Sell More Pizza, Inc.
June 27, 2002
Page Two

6)  At your expense, make such reasonable modifications to the interior and exterior of the
    store, as the Company requires to de-identify the premises as a Domino's Pizza store.

In addition, Paragraph 20.2 ("Post-Term Covenant") of the Franchise Agreement provides in
relevant part, that for a period of one (1) year commencing on the effective date of termination
or expiration of the Franchise Agreement you may not, engage in, be employed by, advise,
assist, invest in, franchise, make loans to, or have any other interest in, any carryout or delivery
pizza store business located at the premises of the store or within ten (10) miles of the
premises of the store (except for other Domino's Pizza Stores operated under Franchise
Agreements entered between franchisee and the company or other Domino's Pizza stores in
which franchisee shall have an ownership interest).

Domino's Pizza intends to take all necessary action to enforce its right under the Franchise
Agreement and expressly reserves the right to pursue any and all remedies available to it under
the Franchise Agreement(s) or state law.  Your immediate attention to this matter is required.

Sincerely,

Scott D. Hoots
Franchise Operations Director
Baltimore Zone Office

**Exhibit "I"**